S. A. PETERS and Timber, Inc., of California, Appellants,

v.

Kal W. LINES, Trustee in Bankruptcy of the Estate of Snow Camp Logging Co., Bankrupt, Appellee.

No. 16322.

United States Court of Appeals Ninth Circuit.

March 7, 1960.

Charles M. Stark, L. W. Wrixon, Paul W. McComish, San Francisco, Cal., Huber & Goodwin, Eureka, Cal., Arthur Shapro, Shapro, Anixter & Aronson, Burlingame, Cal., for appellants.

Max H. Margolis, San Francisco, Cal., Frederick L. Hilger, Eureka, Cal., for appellee.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

JERTBERG, Circuit Judge.

Before us is an appeal from an order of the United States District Court confirming an order, judgment and decree entered by the referee in bankruptcy in these proceedings. The order, judgment and decree was entered against appellants and in favor of appellee in the sum of $674,627.47, upon the objections of the appellee to the proof of claim filed by appellants in the bankruptcy proceedings of Snow Camp Logging Co., a co-partnership. This relief was granted by the referee, and confirmed by the district court, upon the trustee's petition for an order disallowing the claim in question and for a judgment for affirmative relief. The opinion of the district court is reported in D.C.N.D.Cal.1958, 168 F.Supp. 420.

The district court has jurisdiction to review the order of the referee by virtue of Title 11 U.S.C.A. § 67, sub. c. The notice of appeal was timely filed, Title 11 U.S.C.A. § 48. This Court has jurisdiction to review the order of the district court under Title 11 U.S.C.A. § 47.

In order to place in proper focus the questions presented on this appeal, we

will present a brief background leading up to the order, judgment and decree of the referee. On June 1, 1951, Clarence Vander Jack and Clarence C. Vander Jack, partners doing business as Snow Camp Logging Company (hereinafter collectively referred to as the bankrupt), as sellers, entered into a written agreement with S. A. Peters as buyer. Thereafter, pursuant to the terms of the contract, Peters assigned the agreement to Timber, Inc. of California, a California corporation, but under the terms of the contract Peters remained personally bound by the obligations of the contract. Peters and Timber, Inc. of California are hereinafter collectively referred to as the appellants.

By the terms of the contract bankrupt agreed to furnish, and appellants agreed to purchase all of the logs required by appellants in the operation of any or all of their mills in the Redwood Creek Ranch area. The price of all logs was fixed at the Arcata (California) price less $4 per thousand feet net delivered at mill. The contract contained the formula for determining the Arcata price. Payments for logs were to be made semi-monthly for all logs delivered during a semi-monthly period preceding each period. The term of the contract was for a period of ten years, with option on the part of appellants to renew for an additional ten-year term. Appellants agreed to commence construction of a gang type mill before August 1, 1951. Gang type logs were defined to be anything up to 32 inches on the butt end down to 8-inch tops. Appellants agreed to accept all logs up to 40 per cent defective. Paragraph 8 of said agreement provides:

"8. Sellers shall have the right to sell logs of any type to other buyers of logs until buyer comes into full production upon that type of log. In the event buyer ceases production upon any type of log or cuts back on production, sellers shall have the right to sell any of such logs as buyer does not require upon the open market and to other buyers."

Under other provisions appellants agreed to make available to bankrupt all information acquired by appellants concerning timber lands or interest therein in the Redwood Creek Ranch area, and granted bankrupt the first refusal upon any logs or timber purchase contemplated by appellants within that area. Bankrupt agreed that any additional timber holdings or contracts acquired by them in the same area would be under the terms of the agreement.

The recitals in the contract state that bankrupt was then engaged in logging and log sales operation upon the Redwood Creek Ranch and vicinity, and that appellants intend to operate three mills in the Redwood Creek Ranch area, the first to be a gang mill, the second a band or circular mill, and the third a veneer mill.

The gang type mill was constructed and put into operation by appellants. While there is some discussion in the record concerning intentions and plans relating to other types of mills, no mill except the gang mill was constructed.

It is clear from the record that the controversy between the parties relates only to the gang type mill and to gang type logs. Both parties appear to agree that the contract contemplated the operations of both parties in the Redwood Creek Ranch area, and accordingly obligated log production in that area only. Accepting that premise, it appears that the maximum timber of bankrupt initially obligated under the contract was between 250–300 million feet at the beginning of the contract. When deliveries by bankrupt ceased on October 21, 1953 about 100 million feet had been logged, of which about 40 per cent had been delivered to appellants.

It appears from the record that during the period the bankrupt was delivering logs to appellants from the Redwood Creek Ranch area bankrupt was also conducting logging operations in the Blue Lake and Snow Camp area. Neither party contends that the production of logs from these areas was obligated under the contract.

Both parties agreed that the custom in the logging industry in the area involved placed upon appellants the duty to keep clear the mill site dump or pond to which deliveries of logs were to be made by bankrupt and in condition to receive deliveries of logs to be made by bankrupt.

On December 14, 1953, Snow Camp Logging Company, a California corporation, as plaintiff, filed an action in the Superior Court of the State of California, in and for the County of Humboldt, against appellants. The complaint alleged assignment to the plaintiff by bankrupt of its rights to the contract above mentioned, and prayed for moneys due under and damages for the breach of said contract in the total sum of $1,045,493.39. Appellants filed their answer, admitting, by failure to deny, the making of the contract and bankrupt's assignment thereof to the plaintiff, but denying all other material allegations contained in the complaint. Appellants also filed a cross-complaint against plaintiff alleging breach of the contract by plaintiff and praying for damages for such breach in the amount of $900,000.

On February 14, 1955, the partnership filed its voluntary petition for an adjudication of bankruptcy, and was adjudged a bankrupt. On January 11, 1956 appellants filed with the trustee in bankruptcy their claim against the bankrupt (similar to the cross-complaint filed in the state court action) for damages by reason of the bankrupt's alleged breach of the agreement of June 1, 1951.

Thereafter, on October 3, 1956, the trustee in bankruptcy filed a petition for an order, under Section 57, sub. d of the Bankruptcy Act, disallowing the claim and for a judgment for affirmative relief (similar to the relief sought by the corporation in the state court action). On the same day the referee in bankruptcy issued an order to show cause directed to the appellants to show cause why the trustee's petition should not be granted, which order to show cause was returnable on November 7, 1956. On the return date appellants filed their motion for an order authorizing the withdrawal of their proof of claim and an affidavit in support thereof. Appellants likewise filed on the same day their return to the order to show cause, their motion to discharge the same, and their plea in abatement. The motion for withdrawal of proof of claim, the motion to discharge the order to show cause, and the plea in abatement were denied by the referee on November 7, 1956.

The trustee's petition for an order disallowing appellants' proof of claim and for a judgment for affirmative relief was then heard by the referee. During the course of such proceedings the referee restrained appellants from taking any further steps in the state court action and directed that all proceedings in connection with the trustee's petition for a judgment for affirmative relief (hereinafter referred to as the trustee's counterclaim) be litigated in the bankruptcy court. The hearing on the order to show cause extended for several weeks. On March 25, 1958, the referee entered his order, judgment and decree, rejecting the appellants' proof of claim, and granting the trustee's petition for affirmative relief against appellants in the sum above noted. Petition for review was then sought by appellants in the district court. After argument, the district court confirmed the referee's order, judgment and decree.

Appellants' statement of points on appeal asserts fourteen alleged errors on the part of the district court which are reflected in the following statement of questions presented on this appeal:

1. Did the bankruptcy court have summary jurisdiction not only to hear but to grant the trustee's petition for affirmative relief against appellants?

2. Where the subject matter of the trustee's said petition for affirmative relief against appellants (hereinafter for brevity referred to as his "counterclaim") was clearly involved in a state court proceeding which was at issue and ready to be tried before the bankruptcy proceedings in question were commenced, was the bankruptcy court bound by comity to refrain from enjoining and to per-

mit the state court action to proceed without interference from the bankruptcy court?

3. Can a trustee in bankruptcy maintain a counterclaim against a creditor of the bankrupt for damages for breach of a contract, which contract had been assigned before bankruptcy by the bankrupt to a corporation which was not a party to the bankruptcy proceedings?

4. Was there any anticipatory breach by the bankrupt of the contract for the alleged breach of which by appellants the trustee was granted judgment?

5. Was the amount of the damages awarded to appellee against appellants excessive and/or was it supported by competent credible evidence?

We will first consider the question of whether the bankruptcy court had summary jurisdiction not only to hear but to grant the trustee's petition for affirmative relief against appellants. This requires us to determine to what the appellants consented when they filed their proof of claim against the bankrupt. It must be borne in mind that the appellants voluntarily presented their claim as a creditor of the bankrupt estate. They were not forced into the bankruptcy court. For such reason this case is readily distinguishable from many cases cited by the appellants wherein the alleged debtors to the bankrupt's estate did not enter the bankruptcy court of their own accord. In those cases the courts held that no summary jurisdiction existed.[1] Did appellants, by filing their proof of claim, submit to the jurisdiction of the bankruptcy court so as to enable the bankruptcy court to render an affirmative judgment against them arising out of the same contract as that involved in their proof of claim?

When a trustee attempts to obtain, by virtue of a counterclaim, an affirmative judgment against a claimant, the problem is twofold: First, does the bankruptcy court have power to grant an affirmative judgment in summary proceedings; and second, if such power exists, has the claimant consented to its exercise merely by filing his proof of claim?

■ The first question must be answered in the affirmative. See Section 2, sub. a(7) and Section 68 of the Bankruptcy Act, Title 11 U.S.C.A. §§ 11, sub. a(7) and 108. See also In re Mercury Engineering Co., D.C.S.D.Cal.1945, 60 F. Supp. 786. The second question is answered only suggestively by Section 23, sub. b of the Bankruptcy Act, Title 11 U.S.C.A. § 46, sub. b, which requires a party's "consent" to a summary determination of a trustee's petition for affirmative relief.

There is no decision in this circuit directly answering this question, although, see Danning v. United States, 9 Cir., 1958, 259 F.2d 305, for a dictum indicating an affirmative answer. Recent district court cases in this circuit also support this view, although the earlier view in the district courts was to the contrary.[2] The other circuits are not entirely in accord on this question, although the apparent conflict can be reconciled. The leading case supporting the summary jurisdiction of the bankruptcy court in such a case as this is Florance v. Kresge, 4 Cir., 1938, 93 F.2d 784, the principle of which was re-affirmed in Columbia Foundry Co. v. Lochner, 4 Cir., 1950, 179 F.2d 630, 14 A.L.R. 2d 1349, and more recently in Continental Casualty Co. v. White, 4 Cir., 1959, 269 F.2d 213. The rule in the Fourth Circuit is thus clearly defined that the claimant, by submitting his claim to the trustee in bankruptcy, consents to the summary jurisdiction of the bankruptcy court to administer a counterclaim

---

1. See, for example, Harrison v. Chamberlin, 1926, 271 U.S. 191, 46 S.Ct. 487, 70 L.Ed. 897; Cline v. Kaplan, 1944, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97; and Duda v. Sterling Mfg. Co., 8 Cir., 1949, 178 F.2d 428, 14 A.L.R.2d 899, to list only a few of those cited.

2. The problem is well presented and all the district court cases are collected in Gendel, "Jurisdiction of a Referee in Bankruptcy to Render Affirmative Judgments on a Counterclaim in Favor of a Trustee", 26 So.Cal.L.Rev. 167 (1953).

against the claimant asserted by the trustee *provided* the subject matter of the counterclaim is the same as that of the original claim. This is also the rule of the Second Circuit, Chase National Bank v. Lyford, 2 Cir., 1945, 147 F.2d 273; the Third Circuit, In re Solar Mfg. Corp., 3 Cir., 1952, 200 F.2d 327, certiorari denied sub nom. Marine Midland Trust Co. v. McGirl, 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366 [3]; the Eight Circuit, Floro Realty & Investment Co. v. Steem Electric Corp., 8 Cir., 1942, 128 F.2d 338; and the Tenth Circuit, Interstate National Bank v. Luther, 10 Cir., 1955, 221 F.2d 382. Thus five circuits are of the view that the filing of a claim is an implied consent to the bankruptcy court's summary jurisdiction of a counterclaim arising from the same transaction as that from which the proof of claim arises.

In the case of B. F. Avery & Sons Co. v. Davis, 5 Cir., 1951, 192 F.2d 255, certiorari denied 1952, 342 U.S. 945, 72 S.Ct. 559, 96 L.Ed. 703, the Fifth Circuit held that a claimant did not, merely by filing his proof of claim against a bankrupt estate, submit himself to the summary jurisdiction of the referee to recover a preference against him which did not arise out of the same transaction as that involved in the claim. Hence, the Avery case is distinguishable on its facts from the line of decisions following the leading case of Florance v. Kresge, supra, although it is often cited as holding directly contrary to them. To hold that the filing of a proof of claim is to submit to summary jurisdiction on a counterclaim arising from the same transaction is quite a different matter from holding that submission of a claim is a consent to summary jurisdiction on a counterclaim arising from an entirely separate transaction.[4]

We can see no valid reason why the filing of a proof of claim should not constitute a consent to the bankruptcy court's jurisdiction so as to enable the bankruptcy court to render an affirmative judgment against the creditor on the trustee's counterclaim arising out of the same contract. Any other rule would require a trustee to split a cause of action by defending against the claim in the summary proceedings and then seeking affirmative relief in a plenary suit. By filing a claim appellants agreed to submit their side of the controversy to the bankruptcy court's adjudication. In submitting one side of a controversy for resolution logic dictates that the entire controversy should be open for resolution. This is the same reasoning as that underlying Rule 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. dealing with compulsory counterclaims. See the able discussion in In re Farrell Publishing Corp., D.C.S.D.N.Y.1955, 130 F.Supp. 449, concerning this interrelation. Far more expeditious use of the judicial system prevails when controversies arising out of the same transaction are determined in one action than in two separate actions.

The purpose of a plenary suit in bankruptcy administration is to seek recovery of one who has not voluntarily submitted himself to the jurisdiction of the bankruptcy court. Such a suit, in our view, is unnecessary against one who has of his own volition submitted his claims in connection with a certain transaction to the determination of the bankruptcy court. We accept for this circuit the reasoning in Florance v. Kresge, supra. In this case it is undisputed that both appellant's claim and the trustee's counterclaim arose from asserted breaches of the contract on June 1, 1951. Hence, they both clearly arose from the

**3.** But see In re Industrial Associates Inc., D.C.E.D.Pa.1957, 155 F.Supp. 866, apparently ignoring this rule.

**4.** This distinction has been well-noted by the Seventh Circuit in In re Majestic Radio and Television Corp., 7 Cir., 1955, 227 F.2d 152, at page 156, the court saying:

"But no case has been cited, nor have we found any, in which it has been held that a Bankruptcy Court has acquired such jurisdiction of a setoff or counterclaim because the counterdefendant had filed a proof of claim arising out of a completely different subject matter."

same transaction. We hold that the bankruptcy court had summary jurisdiction not only to hear but to grant the trustee's petition for affirmative relief.

In their second point appellants urge that in refusing to allow appellants to proceed in the state court action the referee violated the principle of comity between state and federal courts, and that by such action appellants were deprived of the right to have their cause tried in a plenary action before a jury.

■ It appears that in August 1956 the state court action was set for trial to commence October 1, 1956 before a jury demanded by the plaintiff. Because of the illness of the state court judge such trial date was vacated. Plaintiff waived its right to a jury trial and the case was placed on the non-jury calendar with the consent of appellants, to be tried at a later date. On October 8, 1956 the case was reset for trial as a non-jury case to commence November 26, 1956. On November 7, 1956 appellants filed with the referee a document entitled "Return to Order to Show Cause; Motion to Discharge Order to Show Cause, and Plea in Abatement." In such document appellants alleged that the subject matter involved in the state court action was the identical subject matter as that involved in the trustee's objection to appellant's proof of claim and petition for affirmative relief, and further alleged, "It affirmatively appears from the pleadings and documents on file herein, that above named bankrupt, a copartnership, and plaintiff, a corporation in the State court action, referred to in the trustee's petition are not one and the same person, but that the bankrupt is a copartnership and the plaintiff in the state court is a corporation." Apparently from the record the motion to discharge the order to show cause and the plea in abatement were denied prior to the taking of any testimony. It is our view that the referee violated no principle of comity by his action since there was not complete identity of the parties in the two proceedings. Under the record as it then stood there was not pending before the state court a prova-

ble debt against the bankrupt. This fact distinguishes the cases cited and relied upon by appellants. In the course of the hearing on the order to show cause counsel for appellee objected to appellant's proof of claim on the ground that it was unliquidated. Counsel for appellants stated, "We do not dispute that, but the claim is to be liquidated in the trial of the action in Humboldt County now set for the 26th of November." To which the referee replied, "As I remember, an oral objection to a claim is good enough, isn't it?" Counsel for appellants, "I believe so, but he simply objects on the ground that it is unliquidated." The Referee: "I know he says that, but if he said it does not comply with the Bankruptcy Act—" Counsel for appellants: "Section 57, [sub.] d, your Honor, says that a claim, in effect, can be liquidated in any reasonable manner." The Referee: "I know it says that." Counsel for appellants: "And we are doing our best to liquidate it." The Referee: "But, you don't want to do it in the Bankruptcy Court." Counsel for appellants: "No, sir."

■■ It was at this stage of the proceedings that the referee issued the order restraining the parties from proceeding in the state court action until the further order of the referee. The order was made without notice of hearing thereon but following argument of counsel. We have already held that in filing their proof of claim in the bankruptcy court the appellants voluntarily submitted themselves to the jurisdiction of the bankruptcy court so as to enable that court not only to hear but to grant the trustee's petition for affirmative relief. Under the record in this case the question before the referee was in what manner and by whom should the appellant's claim be liquidated. Under Title 11 U.S. C.A. § 93, sub. d, dealing with proof and allowance of claims, it is provided that an unliquidated claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court. Trial in the state court action had not

commenced at the time of the hearing before the referee on the order to show cause. The parties and their witnesses were then before the referee. To have submitted the claim for liquidation to the state court, in view of the equivocal position taken by the appellants, might reasonably have delayed, interfered with or impeded the administration of the bankrupt estate. There is nothing in the record to indicate the presence of unusual circumstances which rendered unfair or inequitable the liquidation of appellant's claim in the bankruptcy court. We are not impressed by appellant's argument that they were denied their right to a jury trial. In view of the record on this point, such contention is far more illusory than real. In filing their proof of claim in the bankruptcy court appellants consented to the summary jurisdiction of the bankruptcy court and thereby waived any right to trial by jury on the issues involved in such claim. Title 11 U.S.C.A. § 11, sub. a(15) empowers the bankruptcy court to "make such orders, issue such process, * * * as may be necessary for the enforcement of the provisions of this title." As above stated, it is our view that there was no abuse of discretion on the part of the referee in issuing the order complained of.

In their third point the appellants maintain there is not one scintilla of evidence or documentary proof to sustain the finding of fact made by the referee "that at the time of the filing of the petition in bankruptcy herein said bankrupt owned the rights and property in and to said writing, Trustee's No. 1". The reference to Trustee's No. 1 is the agreement of June 1, 1951 by and between the bankrupt as seller and appellant Peters. Appellants' proof of claim filed in the bankruptcy proceedings had attached as exhibits the pleadings in the state court action. In the complaint filed in the state court action plaintiff alleged that prior to commencement of said action the rights of seller (bankrupt) were assigned to plaintiff, and that plaintiff is the owner and holder thereof. Such allegation was not denied in the answer filed by the appellants to such complaint. In appellee's petition for order disallowing appellants' claim and for judgment for affirmative relief appellee alleged that prior to bankruptcy the bankrupt partnership "without any consideration therefor, assigned its claim" to the corporate plaintiff in the state court action "and said claim is a valuable asset of the estate of said bankrupt * * *." Appellants assert that the burden of proof of establishing that the assignment was made without consideration was upon appellee and that appellee failed to sustain such burden. Appellants then proceed to argue "that the appellants having introduced into evidence the complaint in the Humboldt County action were entitled to rely on the undenied allegations of the complaint therein, and the trustee in bankruptcy in his failure to support the allegations made in his petition for an order to show cause that the assignment was made to the corporation which is not bankrupt was invalid because of a lack of consideration, finds no support whatsoever in the record, either oral or documentary." While appellee suggests that the appellants failed to designate as part of their record on appeal the testimony surrounding the ruling of the referee that the bankrupt owned the rights and property in and to such written agreement, we are unable to agree with such statement notwithstanding the district judge's views to the contrary.

■ Appellant's argument on this point is two-fold: First, that the allegation of assignment appearing in the complaint in the state court action constituted an admission against interest which was binding upon the bankrupt estate. This is true only if the corporation in the state court action and the bankrupt were one and the same person. If the plaintiff in the state court action was a separate and distinct entity from the bankrupt then such corporation's admission would not be evidence against the bankrupt. If the plaintiff in the state court action and the bankrupt are the same entity, clearly the contract was an asset of the bankrupt

estate. The second facet of appellant's argument is that the burden of proof was upon appellee to prove the allegations in appellee's petition for order disallowing claim that the assignment was "without any consideration whatsoever" and that said claim "is a valuable asset" of the estate of said bankrupt copartnership.

■ In determining the ownership of a cause of action, and in identifying the real party in interest, the federal court will apply the law of the state in which it sits. Young v. Garrett, 8 Cir., 1945, 149 F.2d 223; American Fidelity & Casualty Co., Inc. v. All-American Bus Lines, 10 Cir., 1949, 179 F.2d 7. Hence we turn to a review of California law on this subject.

■ In this proceeding, the point in issue before the referee was the ownership of the contractual right and not the deraignment of title. Pleading of such deraignment is surplusage and irrelevant. Larco v. Casaneuava, 1866, 30 Cal. 560. The manner of acquisition of ownership was not an issue. In McCaughey v. Schuette, 1897, 117 Cal. 223, 46 P. 666, 48 P. 1088, the court held that the only proper pleading is one in which ultimate facts are involved. Admissions in a complaint, even though admissible in evidence against the pleader, Giannone v. United States Steel Corp., 3 Cir., 1956, 238 F.2d 544, do not defeat a cause of action when they are of probative rather than of ultimate facts. Harris v. Hillegass, 1880, 54 Cal. 463. Under California law there is no requirement that a court must accept as determinative of an issue allegations contained in the pleading which are irrelevant to the ultimate fact in issue. See Buxbom v. Smith, 1944, 23 Cal.2d 535, 145 P.2d 305, on the function of pleadings in California actions. Therefore the bankruptcy court was not precluded by the allegations relating to the assignment and the lack of consideration therefor appearing in appellee's petition for an order disallowing claim and for judgment for affirmative relief.

The only evidence introduced on the subject of ownership of the contract during the extensive hearing on the order to show cause was a copy of the contract between the bankrupt partnership and the appellant Peters. The document was in possession of the bankrupt. The contract itself expressly provided that it was not assignable. The testimony before the referee related almost entirely to performance or lack of performance of the contract by the respective parties, and to damages.

■ We hold that there was sufficient evidence before the referee to establish prima facie ownership of the contract by the bankrupt. No compelling evidence was offered by appellants to rebut this prima facie showing.

■ Appellant's fourth contention is that the referee erred in finding that there was no anticipatory breach and no actual breach of the agreement by the bankrupt prior to the alleged breach by appellants. It is to be borne in mind, both in connection with appellants' claim of anticipatory breach and breach of the contract, that the referee chose to place credence in the testimony of the witnesses on behalf of the trustee and not in the testimony of the witnesses for the appellants. The referee was the sole judge of the credibility of the witnesses.

In an endeavor to show that the bankrupt had committed an anticipatory breach of its contract appellants sought to prove that the bankrupt had entered into an agreement in the fall of 1953 to supply logs to a third party, which logs appellants assert were required to be delivered to them under the contract. The referee refused to receive such contract in evidence, and rejected appellant's offer of proof that the bankrupt had delivered from October 1, 1953 to July 1, 1954 a substantial quantity of logs to such third party. Appellants contend that the bankrupt breached the contract by selling gang logs to third parties prior to appellants' purported refusal to receive logs from bankrupt on October 21, 1953 at a time when appellants were in full production.

■ In view of the entire record we are not persuaded that the referee erred

either in connection with its rulings on anticipatory breach or actual breach. It is to be borne in mind that the questions of when appellants came into full production and when appellants cut back on production were questions of fact to be determined by the referee. It must also be borne in mind that while the parties appear to agree that the contract contemplated log production in the Redwood Creek Ranch area, it is likewise clear that the contract contemplated acquisitions of additional timber by bankrupt in the Redwood Creek Ranch area, in addition to its holdings in such area at the time of the execution of the contract. The evidence as to whether appellants ever reached full production is in conflict. There is evidence that appellants' mill cut back from three shifts to two shifts in the summer of 1953. There is evidence that at all times appellants' log pond was full of logs. On September 12, 1953, appellants claimed to be in full production. The referee found such statement to be untrue, and that demand made upon bankrupt by appellants to discontinue the selling of gang logs to any third person was not made in good faith. It is clear from the provisions of paragraph 8 of the contract quoted supra that bankrupt had the right to sell gang logs to third parties until appellants came into full production of gang logs and that bankrupt had the right to sell gang logs to third parties in the event appellants cut back on production of gang logs not required by appellants. There is sufficient evidence in the record from which the referee could have inferred either that the appellants had never come into full production on gang type logs or that appellants had cut back on production of such logs, and that the gang logs sold to third persons were not required by appellants. Appellants' argument that the sale of gang logs to third parties might exhaust bankrupt's timber holdings in the Redwood Creek Ranch area and thereby render bankrupt unable to perform its obligations for delivery to appellants in the future overlooks the fact that the contract contemplated additional acquisitions of timber in that area by bankrupt. Under the contract bankrupt agreed to furnish logs required by appellants during the term of the agreement, and not just the timber owned by bankrupt at the time of the execution of the contract. The referee did not err in finding there was no anticipatory breach, and no prejudicial error was committed by the referee in rejecting the contract and offer of proof. There was no error on the part of the referee in failing to find an actual breach of the contract by the bankrupt. The finding of the referee that appellants breached the contract is amply supported by the record.

■ Appellants also complain of adverse rulings made by the referee in connection with appellants' effort to adduce evidence in support of their proof of claim. Appellants sought to introduce oral testimony as to damages sustained by them through excess costs, as a result of the failure of bankrupt to deliver all of the gang logs as required per paragraph 8 of the contract. Under the record in this case we find no prejudicial error in this respect. The referee ruled that secondary evidence of the accounts would not be received until the books and records had been produced, and notified counsel for the appellants that he would have to produce the records. Such counsel stated said records would be produced "if we conclude, after consulting with each other, that it is vital to the interests of our client that we produce them." Such records were not produced. Furthermore, there was conflict of evidence in the record as to whether or not appellants actually kept such books and records. Under these circumstances it was well within the discretion of the referee to hold that the oral testimony or summaries of the books and records would not be received until the original books and records had been produced.

Appellants' final contentions relate to the damages awarded to appellee. The

total damages awarded to appellee is $674,627.47, computed as follows:

$ 19,625.91—for amount invoiced by bankrupt and not paid.

$ 30,931.57—for loss of truck earnings.

$146,319.00—for disruption of normal operating procedures.

$477,750.99—for future performance.

We will discuss these items seriatim.

With respect to the first item the referee found:

"That after June 1, 1951, and prior to October 21, 1953, said bankrupts delivered logs to Peters and Timber Incorporated of California, and Peters and Timber Incorporated of California did not pay therefor the Arcata market price less $4.00 per thousand board feet as provided in said writing, although said bankrupts demanded such payments; that as a direct result of refusal to pay such price bankrupts were damaged in the sum of $19,625.91; that at no time prior to October 21, 1953, was there any good faith dispute as to price stated in the writing, Trustee's No. 1, nor manner of computation thereunder."

■■■■■ Appellants assert that the referee erred in finding there was no accord and satisfaction between the bankrupt and appellants concerning the amount due. It appears that for the period between July 15 and October 1, 1953, bankrupt invoiced appellants semimonthly for deliveries of logs made during a semi-monthly period preceding the dates of such invoices. Invoices were based upon the Arcata price as determined by the formula set forth in the agreement. Appellants paid each invoice by check, and each check was for a lesser amount than the invoice. Each check was marked "payment in full is hereby acknowledged for all logs delivered for the period" covered by the invoice. The checks were all cashed by the bankrupt, although bankrupt by letter protested such reduced payments. The law is well established in California that where

*there is a bona fide dispute as to a claim* and a check is tendered in settlement thereof which gives the creditor notice that it must be accepted in full discharge of the claim or not at all, retention and cashing of the check constitutes accord and satisfaction. Edgar v. Fitch, 46 Cal. 2d 309, 294 P.2d 3. As noted above, the referee found that there was no good faith dispute as to price or manner of computation thereof. While appellants state that there is no evidence in the record supporting such finding our examination of the record prompts us to disagree. In addition to the documentary evidence on this subject, which is far from conclusive, there was conflict in the testimony of the witnesses who testified on the subject. Here again the referee *chose to place credence in the witness for bankrupt and not the witness for appellants.* We hold that the finding of the referee that no dispute existed is sustained by the record.

■■■■ With respect to the last three items of damage appellants urge the damages awarded were based on speculation and are unsupported by the record. We agree. The law is well settled that the burden of proof is upon the party claiming the damage to prove that he has suffered damage and to prove the elements thereof with reasonable certainty. Parke v. Frank, 1888, 75 Cal. 364, 17 P. 427; Tremeroli v. Austin Trailer Equip. Co., 1951, 102 Cal.App.2d 464, 227 P.2d 923; and Sapp v. Barenfeld, 1949, 34 Cal.2d 515, 212 P.2d 233.

While we do not propose to outline the full procedure apparently employed by the referee in his computation of the various elements of damage, we will point out certain deficiencies in proof.

In respect to the loss of truck earnings in the amount of $30,931.57, the referee found for the period June 1, 1953 to October 15, 1953 the trucks of bankrupt were unable to be utilized normally and efficiently because of the failure of appellants to maintain a properly manned adequate log dump at its mill. The calculations resulting in said sum were based completely upon an estimate that a truck

was "supposed to earn $3,000 per month gross." The testimony relating to actual gross earnings per month of bankrupt's trucks was substantially less. Other elements involved in the calculations of loss of truck earnings were equally hypothetical and speculative.

In respect to the award for disruption of normal operating procedures in the amount of $146,319, the referee found that as a result of the failure of appellants to maintain the log dump in operating condition the woods operations of the bankrupt were disorganized and wasteful of manpower and machinery time, and as a result bankrupt sustained damages in the sum of $146,319. Again the elements involved in the calculation of damages were hypothetical and speculative. Apparently such amount was based on (a) a record of the total number of hours worked by the timber crews for the period of the log dump delay; (b) a record of the wages per hour for operating the timber crew; and (c) an estimate by one of the partners of the bankrupt that delays in unloading trucks constituted about 30 per cent of their useful time. To what extent log dump delays caused inefficiency and a waste of time in the forests does not appear. Apparently the referee concluded if the log dump delay caused 30 per cent reduction in the utilization of the trucks that such delay had a corresponding effect on the timber crews.

In respect to the award for loss of profits based on future performance in the amount of $477,750.99, the referee found that as a direct result of the acts of appellants the bankrupt was prevented from delivering logs for the remaining term specified in the agreement, causing damage to the bankrupt in the amount stated. The referee found that the price structure specified in the contract gave the bankrupt a $2.31 per 1,000 board feet price advantage, and projected this figure over the balance of 91 months of the con-tract, assuming an average monthly delivery of 2,272,732 feet. It is conceded by appellee that a mathematical error occurred in the summary of deliveries to appellants by bankrupt for the period January 1, 1953 through September 30, 1953, which were divided by eight months instead of nine to arrive at the average monthly delivery. The difference between the monthly average taken by the referee and the true average is 252,526 feet per month. This figure is projected over the period of 91 months and we have a difference of 22,979,866 feet, at $2.31 per thousand feet. Thus the award on this item is admittedly excessive to the extent of $53,083.49. Irrespective, however, of such error, the evidence is insufficient to justify such award. The maximum timber in the Redwood Creek Ranch area owned by the bankrupt at the time of the breach by appellants was 200 million board feet. No evidence was received that bankrupt had in the form of options or otherwise acquired or could have acquired additional timber in the Redwood Creek Ranch area. Furthermore, the evidence is clear that only about 40 per cent of the remaining timber owned by bankrupt would be deliverable or delivered to the appellants. Such factors were not reflected in the computations apparently made by the referee. The result is that here again the award is speculative and hypothetical.

■■■ We hold that the award for damages for the items of truck earnings and disruption of normal operating procedures, and for future performance is excessive, speculative and without sufficient support in the evidence.

The order of the district court affirming the order, judgment and decree of the referee in bankruptcy is reversed only as to the amount of the judgment, and the cause is remanded to the district court for appropriate proceedings to redetermine the issue of damages consistent with the views herein expressed.