In the Matter of LOS ANGELES TRUST DEED & MORTGAGE EXCHANGE, Bankrupt.

ASSOCIATE FUNDINGS, INC., et al., Respondents-Appellants,

v.

Stanley A. PHIPPS et al., Trustees-Appellees.

No. 25393.

United States Court of Appeals, Ninth Circuit.

July 17, 1972.

---

John E. Glover, Beverly Hills, Cal., for appellant.

Tiernan & Moneymaker, Los Angeles, Cal., for appellee.

Before MERRILL, DUNIWAY and CHOY, Circuit Judges.

CHOY, Circuit Judge:

This action stems from certain free-wheeling activities of David Farrell, president and principal shareholder of Los Angeles Trust Deed & Mortgage Exchange (Exchange). In late 1958 and early 1959, Exchange financed several ventures of Edmund Cantillon and Alvin Rabalais, who were in the business of developing real property, mostly in Orange County, California.

Cantillon and Rabalais operated via different legal entities—sometimes as a

co-partnership under the name, Westport Development Co. (Westport), sometimes through either of two corporations, Associate Fundings, Inc. (Associate) or Brentwood Downs, Inc. (Brentwood). They negotiated an arrangement with Farrell whereby Exchange would loan funds at 10% interest to one or more of the Cantillon-Rabalais legal entities, with trust deeds as security. In addition, Farrell personally was to receive 50% of the net profits on each tract financed by Exchange. During 1958 and 1959, Exchange financed development of seven tracts under this arrangement. In every situation, the secured loan with 10% interest was set forth in one document and the agreement to share profits with Farrell was set forth in another.

On December 18, 1960, Exchange was adjudicated bankrupt. In July 1961, Cantillon and Rabalais filed with the bankruptcy referee two claims related to loans on two of the seven tracts. On July 29, 1966, the trustees, after acquiring both Farrell's and Exchange's interests,[1] filed a counterclaim, praying that the referee dissolve the Cantillon-Rabalais "joint ventures" with Farrell and order payment to the trustees of 50% of the profits earned on the five tracts which were not included in the claims filed by Cantillon and Rabalais. Based upon certain documents, an audit of the profits on the five tracts and a stipulation of facts, the referee ordered the joint ventures to be dissolved and ordered Westport, Associate and Brentwood to turn over 50% of the net profits on the tracts. The district judge affirmed the order and this appeal followed.

## I. *Filing Claims as a Basis for Summary Jurisdiction on Counterclaim.*

The trustees contend that the referee correctly exercised summary jurisdiction over their counterclaim, based upon *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), wherein the Supreme Court held that "the [Bankruptcy] Act does confer summary jurisdiction to compel a claimant to surrender preferences that under § 57, sub. g would require disallowance of the claim." 382 U.S. at 335, 86 S.Ct. 476. The trustees would have us interpret *Katchen* broadly to confer summary jurisdiction to determine counterclaims based on transactions which are separate[2] from the subject matter of creditors' claims. We decline to interpret *Katchen* in such a broad manner.

The Court emphasized in *Katchen* that an objection to a claim under § 57g is "part and parcel of the allowance process" 382 U.S. at 330, 86 S.Ct. at 473, and as such subject to the jurisdiction of the bankruptcy referee. Also, as "part of the process of allowance and disallowance of claims, it is triable in equity." 382 U.S. at 336, 86 S.Ct. at 476, and thus no right to jury trial exists.[3]

---

1. In November, 1962, trustees for Exchange acquired Farrell's interest in 50% of the profits of the ventures. This was the result of a compromise of a controversy between the trustees on the one hand and Farrell, his wife and various Farrell entities on the other hand. The controversy was also occasioned by the divorce of Farrell and his wife. The agreement was embodied in an order of compromise, which consolidated the holdings of Farrell and Exchange under the auspices of the trustees in bankruptcy.

2. Although the contracts for each tract were identical and later ones were routinely executed without further negotiation, the referee found that the parties treated the financing for each tract as a separate transaction. The determination is not "clearly erroneous" and we abide by it in this appeal.

3. The Supreme Court did not consider in *Katchen* the issue presented by the instant case. At the court of appeals level, the Tenth Circuit ruled that a bankruptcy referee does not have jurisdiction to hear counterclaims arising out of separate transactions. *Katchen v. Landy*, 336 F. 2d 535 (10th Cir. 1964). Unfortunately, the trustee did not appeal this aspect of the court of appeals' decision. *Katchen v. Landy*, 382 U.S. 323, 326, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

After a review of the language of the Bankruptcy Act and the underlying policies, we believe that the referee had no jurisdiction over a counterclaim, unrelated to the transaction upon which a creditor's claim is based. The Act does not make counterclaims a subject of objection to a claim. In Peters v. Lines, 275 F.2d 919 (9th Cir. 1960), this circuit ruled that the filing of a claim constitutes a consent to summary jurisdiction of the referee and enables the referee to render affirmative relief on a trustee's counterclaim arising out of the same transaction as a claim submitted by the creditor. Settlement of the transaction itself had already been tendered to the referee. Thus, in "submitting one side of a controversy for resolution logic dictates that the entire controversy should be open for resolution." 275 F.2d at 925. The distinction between such a case and an unconnected counterclaim was carefully noted. 275 F.2d at 925, fn. 6.

The trustees have not persuaded us that *Katchen* requires that we abandon the distinction we established in *Peters*. That the referee lacked jurisdiction over the trustees' counterclaim may be expressed in affirmative terms: Cantillon and Rabalais, i. e., their legal entities, had a right to have their interests in the dispute (stemming from the five unrelated transactions) adjudicated in a plenary action rather than in a bankruptcy proceeding. *See* 2 Collier on Bankruptcy ¶ 23.08[1], pp. 530–531. Therefore, we hold that the bankruptcy referee did not have summary jurisdiction over the trustees' application for dissolution of the Cantillon-Rabalais joint ventures.[4] Financing of these five tracts was separate from the transaction that constituted the subject matter of the Cantillon-Rabalais claims.

## II. Consent to Summary Jurisdiction by Waiver of Right to Object.

Ordinarily, a challenge to summary jurisdiction in bankruptcy must be asserted by a creditor to the referee at an early stage in the proceedings. Otherwise, the creditor is deemed to have waived the right; he is deemed to have consented to the summary jurisdiction. *See* 2 Collier on Bankruptcy, ¶ 23.08[4], pp. 536–547.

Section 2, sub. a(7) of the Bankruptcy Act, 11 U.S.C. § 11(a) (7), the source of the consent jurisdiction, provides:

". . . and where in a controversy arising in a proceeding under this Act an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction;"

The trustees contend that Cantillon and Rabalais waived this right by failing to object to summary jurisdiction in a timely manner. We disagree.

On October 7, 1966, at the request of the trustees, the referee in bankruptcy held a hearing to "pre-try" the controversy and "narrow the issues". At that time, counsel for Cantillon and Rabalais filed an answer which raised several defenses not including lack of summary jurisdiction. However, counsel made oral objection to the jurisdiction of the referee.[5] An amended answer was filed

---

4. Accord: In re Carnell Construction Corp., 424 F.2d 296 (3rd Cir. 1970); Katchen v. Landy, 336 F.2d 535 (10th Cir. 1964); Cherno v. Engine Air Service, Inc., 330 F.2d 191 (2d Cir. 1964).

5. MR. MONEYMAKER [Counsel for Trustees]: I don't believe there is any objection to jurisdiction.

THE REFEREE: They are going about, in any event, raising that objection.
MR. GLOVER [Counsel for Cantillon and Rabalai]s: We are certainly raising it now, and we have raised it before [on discovery].

. . . .

MR. GLOVER: . . . We are certainly objecting to the—you pointed out

on February 8, 1967, raising the additional defense of lack of jurisdiction.

Rule 12(h) of the Federal Rules of Civil Procedure provides that all defenses—including lack of personal jurisdiction—not raised by preliminary motion or by answer are waived, with certain exceptions not applicable here. The waiver rule is modified by liberal allowances for leave to amend under Rule 15(a).

■ Fairly read, we believe that the colloquy quoted in the margin indicates that the referee granted leave to amend, when counsel for Cantillon and Rabalais orally objected to summary jurisdiction at the pretrial hearing. However, the Federal Rules of Civil Procedure are applicable to bankruptcy proceedings only insofar as they do not contradict other special bankruptcy rules.[6] It is therefore necessary to examine what has historically been a very thorny problem for bankruptcy practitioners, the courts and Congress.

Congress adopted § 2, sub. a(7) of the Bankruptcy Act in 1952[7] in order to modify the rule of Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944), that an adverse party could object to the summary jurisdiction of a bankruptcy referee so long as the objection was "formal" and was made at any time before the entry of a final order in the proceeding.[8]

■ The trustees contend that Cantillon and Rabalais waived the right to object to summary jurisdiction because they did not comply with Local Bankruptcy Rule 203 of the United States District Court (C.D.Cal.), which provides:

"A respondent desiring to contest a summary proceeding against him,

---

that it hasn't been pleaded. We objected when we were here before on the same theory, that this was a matter for the Trustee to file an action on if he wants to enforce these contracts.

That is our objection, good or bad.

THE REFEREE: I suggest you file a supplement to your response and set up any objection to jurisdiction.

Now, we will see how far we can go on this pretrial.

After discussing other matters, the referee mentioned the jurisdiction objection again.

THE REFEREE: Apparently there is no dispute that there are then a number of contracts covering a number of tracts, and maybe you can reach a stipulation that these are the terms in all of them, setting forth any language which is agreeable to both of you. It will save an awful lot of trouble; and all of this is without prejudice to your objection to jurisdiction.

6. Following passage of the Bankruptcy Act in 1938, the Supreme Court promulgated General Orders, effective February 3, 1939. General Order 37 provides:

"In proceedings under the Act the Rules of Civil Procedure for the District Courts of the United States shall, in so far as they are not inconsistent with the Act or with these general orders, be followed as nearly as may be. * * *"

See 1 Collier on Bankruptcy, ¶ 2.81, P. 390.40.

7. Pub.L. 456 (S.2234), 82d Cong., 2d Sess.

8. See 2 Collier on Bankruptcy, ¶ 23.08[4], pp. 543–545. The drawbacks of *Cline* were stated in a House Report as follows: ". . . This holding has unsettled sound procedure and an expeditious administration in bankruptcy. A respondent may now proceed on the merits and gamble on a favorable decision. When he perceives or fears that the decision will be against him on the merits, he may interpose his formal objection to jurisdiction at any time before the entry of the order, and, should his objection be sustained, the summary proceedings must be dismissed. In such event, the trustee is required to relitigate the issues in a plenary action.

"The proposed amendment is intended to overcome this unsatisfactory situation and is keyed to rule 12(h) of the Federal Rules of Civil Procedure, which requires the timely interposition of an objection to jurisdiction and, if not so made, the defense is deemed waived." House Report No. 2320 on S.2234, 2d Sess. 4 (1952).

See also Sloan, "Procedural Effect of the 1952 Amendment to Sec. 2, sub. a(7) of the Bankruptcy Act," 28 J. of Nat'l Ass'n of Ref. 32 (1954), cited in 2 Collier on Bankruptcy, ¶ 23.08[4], p. 545, n. 48.

shall serve and file not less than two (2) days before the hearing a written answer, objection or other responsive pleading which shall be verified if it sets up matters of fact."

We are thus faced with the issue of whether the local rule's requirement of a written objection is subject to leave to amend. We hold that it is.

■ The legislative history of § 2, sub. a(7) clearly indicates that Congress passed the provision to deter forum shopping by adverse claimants, by requiring that an objection to summary jurisdiction of the bankruptcy referee be made in an explicit manner at an early stage in the proceedings. The section specifically states that the time for a written objection may be "extended by order of the court." This authorizes the bankruptcy referee to grant leave to amend when an oral objection is so made as to leave little doubt about the basis of the objection and at a time when the opposing party has not incurred substantial costs by proceeding in more than one forum. *Accord*: In re Perspectron, Inc., 422 F.2d 576 (7th Cir. 1970); Cf. Hall v. Goggin, 148 F.2d 774 (9th Cir. 1945); 2 Collier on Bankruptcy, ¶ 23.-08[4] p. 546, n. 53. Compare Honeyman v. Hughes, 156 F.2d 27 (9th Cir. 1946).

■ Here, counsel for Cantillon and Rabalais made his oral objection to summary jurisdiction at a pretrial hearing only minutes after filing an answer which did not raise the objection. The objection was just as timely as if it had been in the answer. The trustees were not misled. Leave to amend was wholly appropriate in such circumstances.

### III. *Conclusion.*

In sum, the bankruptcy referee did not have summary jurisdiction over the legal entities of Messrs. Cantillon and Rabalais. The trustees' counterclaim stemming from separate transactions was not within the referee's jurisdiction, and the creditors raised this defense in a timely manner.

Reversed and remanded.