578

In re G. L. ODELL CONST. CO.

AMERICAN EMPLOYERS' INS. CO.

v.

LEACH.

Bankr. No. 14275.

United States District Court,
D. Colorado.

Feb. 12, 1954.

McComb, Zarlengo, Mott & Schmidt, Denver, Colo., Robert B. Moch, Denver, Colo., for American Employers' Ins. Co.

William H. Scofield, Denver, Colo., for Trustee in Bankruptcy.

Frank P. Lynch, Jr., Denver, Colo., for National City Bank of Denver.

KNOUS, District Judge.

This matter is presently before this Court on a Petition for Review of an order of the Referee in Bankruptcy entered on the petition of the trustee for payment to him of certain funds in the hands of the General Accounting Office of the United States and enjoining the prosecution of a certain proceeding in the Court of Claims instituted by the American Employers' Insurance Company which prosecutes this petition for review.

The petitioner hereinafter will be referred to as "the Company," the G. L. Odell Construction Company as "the bankrupt," and Royal J. Leach, Trustee in Bankruptcy, as "the Trustee."

The bankrupt entered into a contract with the United States of America, Army Corps of Engineers, on or about April 26, 1950, for the reconstruction of a certain dam and reservoir project in New Mexico. In conformity with bidding requirements, the bankrupt obtained a Payment Bond (construction) from the Company wherein the bankrupt was principal and the Company was surety under which both were bound unto the United States of America in the penal sum of $57,029.20 for payment of all labor and material incurred for and used on the project.

Such bond was executed on April 26, 1950, and one of the terms in the supporting Agreement of Indemnity contemporaneously signed, was:

"In further consideration of the execution of the said bond, the undersigned does hereby agree, as of this date, that the said American Employers' Insurance Company, shall as surety on said bond, be subrogated to all rights, privileges and properties of the undersigned as principal and otherwise in said contract, and does hereby assign, transfer and convey to said Corporation all the deferred payments, and retained percentages, and any and all moneys and properties that may be due and payable at the time of such breach or default, or that may thereafter become due and payable to said undersigned on account of said contract, or on account of extra work and materials supplied in connection therewith, thereby agreeing that all such moneys, and the proceeds of such payments and properties, shall be the sole property of the said American Employers' Insurance Company, and to be by it credited upon any loan, cost, damage, charge and expense sustained, or incurred by it as above under its bond of suretyship."

The bankrupt commenced performance of the construction but in the course thereof breached the contract by failing to pay claims for materials and labor in the amount of $31,057.21. Under the provisions of the Payment Bond the Company thereafter paid said claims in that amount.

At the completion of the contract the United States of America still owed the bankrupt $9,831.16, which sum is presently held by the General Accounting Office of the United States of America and which office refuses to disburse this money without an order of court resolving the adverse claims of the bankrupt, the Company and The National City Bank of Denver, a partial assignee of bankrupt's rights under the government contract executed for security purposes on November 11, 1950.

The voluntary petition of the bankrupt was filed herein on April 18, 1952. On November 13, 1952, the Company filed a claim against the bankrupt estate in the amount of $31,056.81. The Company has instituted two civil actions directed to the recovery of the balance due the bankrupt from the United States on the contract. The first proceeding was filed on August 10, 1951. That action was ultimately dismissed for failure to prosecute under the rule after the Company had filed a second action now pending in the United

States Court of Claims on April 30, 1953, being numbered 17653, the further prosecution of which was enjoined by the order of the Referee in review.

On June 5, 1953, the trustee of the bankrupt estate filed a petition herein for a restraining order and for an order directing the payment to the trustee of the $9,831.16 fund in controversy. The Referee sustained the trustee's contention that such fund was an asset of the bankrupt estate and ordered that it should be paid to the trustee by the General Accounting Office. The Referee further held that the Company should set up by proper pleadings in the bankruptcy proceeding its claim to said fund as well as any priority asserted, and finally that the Company be restrained from further proceeding in either its action in the United States Court of Claims or in first proceeding in this Court.

The Referee has now certified the following questions to this Court:

1) Was the fund (in the hands of the General Accounting Office) the property of the Company by virtue of the assignment contained in the Agreement of Indemnity?

2) If statement 1 is answered in the negative, did the Referee err in holding that under Section 7, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 25, sub. a, he had jurisdiction, as between said Company and the Trustee in Bankruptcy, to determine the ownership and disposition of the fund?

This matter was orally argued before this Court and held under advisement. The position of the Company is based upon the proposition that the property in controversy was not in the possession of the trustee either actually or constructively, but by reason of the provisions of the Indemnity Agreement hereinabove set forth was constructively in the possession of the Company which has a substantial and real right to the corpus of such fund. The Company asserts that under such facts the law gives it the right to prosecute a plenary suit for the determination of its rights against the

fund in the hands of the General Accounting Office, and does not restrict it to a summary determination of interests in the bankruptcy proceeding.

The trustee and the subsequent security assignee of the bankrupt's contractual rights take the position that this matter is properly the subject for a summary disposition in the bankruptcy proceeding because: 1) the purported assignment to the Company was not actually an assignment but only a security transaction, and 2) the Company has submitted itself to the jurisdiction of the bankruptcy proceeding by filing a claim in said proceeding.

As is stated in Collier on Bankruptcy, vol. 2, section 23.05(3), page 473:

"The rule which gives the bankruptcy court exclusive jurisdiction to determine claims to property in its custody is not limited to actual possession, but extends to constructive possession as well, including property held not only by but for the bankrupt."

There is, however, an exception to this general rule which has been recognized several times by the Supreme Court of the United States, including one very recent decision.

This exception arises where the controversy involves property not in the Court's possession to which a third person asserts bona fide claim adverse to the Trustee. In such a situation the bankruptcy court has no jurisdiction to determine summarily the third person's claim upon petition by the receiver or trustee, unless by such person's consent. See Taubel-Scott-Kitzmiller Co., Inc. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770; Harrison, Trustee v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897, and Cline, Trustee v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97.

As is stated in the Cline case, supra, 323 U.S. at page 98, 65 S.Ct. at page 156:

"If the property is not in the court's possession and a third person asserts a *bona fide* claim adverse to the receiver or trustee in bank-

ruptcy, he has the right to have the merits of his claim adjudicated 'in suits of the ordinary character, with the rights and remedies incident thereto.' "

 It is true that the bankruptcy court has both the power and duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial. Louisville Trust Co. v. Comingor, 184 U.S. 18, 22 S.Ct. 293, 46 L.Ed. 413. However, once it is established that the claim is not colorable nor frivolous, which in the view of the Court is the category of the Company's claim, the claimant has the right to have the merits of his claim passed on in a plenary suit. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant has consented to its summary adjudication in the bankruptcy court. McDonald v. Plymouth County Trust Co., 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093.

Such consent is present here, the Trustee argues, as the result of the Company's filing of its claim in the bankruptcy proceeding.

This Court feels that this argument must be resolved against the Trustee on two grounds. The first is that consent, as a legal proposition, is wanting where as herein the claimant throughout has resisted the petition for a turnover order and where he has made formal protest against the exercise of summary jurisdiction by the bankruptcy court before that court has made a final order. Louisville Trust Co. v. Comingor, supra.

The second ground for negativing the existence of consent herein rests upon the practicalities of the Company's position. The bankrupt, under the Indemnification Agreement, allegedly owed the Company $31,056.81, of which there existed a possibility of recovering $9,-831.16 from the fund in question. It is apparent that to protect its position the Company had to file a claim in the bankruptcy proceeding from the entire amount of indebtedness, since otherwise in the event the courts should deny the Company's claim for the $9,831.16 fund in question, the Company would lose its right to that extent to participate as a creditor in the bankruptcy proceedings. That a claimant should be bound by such an election at the time of filing of a claim is a burden not imposed by law.

Thus, it appears that no basis can be found upon which consent can be said to have vested jurisdiction in the bankruptcy proceedings in the matter in question.

The questions certified to this Court by the Referee in Bankruptcy, therefore, are answered as follows:

1) There is a sufficient showing of a real and substantial basis for claim of the Company to the $9,831.16 fund to entitle the Company to a plenary determination of its right thereto;

2) For the reasons hereinabove given, the Referee was without jurisdiction to attempt the disposition ordered. It is, therefore,

Ordered, Adjudged and Decreed that the order on petition of trustee for restraining order and for order for payment of assets into the hands of the trustee be vacated and held for naught.