**GLENS FALLS INSURANCE CO.,**
Plaintiff,

v.

Arne STROM et al., Defendants.

Alexander McArthur HOLMAN, etc.,
Plaintiffs,

v.

Arne STROM et al., Defendants.

Nos. 2300–SD, 2322–SD.

United States District Court
S. D. California, S. D.

Sept. 27, 1961.

Higgs, Fletcher & Mack, San Diego, Cal., for Glens Falls Ins. Co.

Luce, Forward, Hamilton & Scripps, San Diego, Cal., for intervenors Harbor Boat & Yacht Co.

Ball, Hunt & Hart, Long Beach, Cal., for intervenors Van Camp Sea Food and National Packing Co.

Freston & Files and Eugene D. Williams, Los Angeles, Cal., for intervenors, Thomas C. Tilley, trustee in bankruptcy for Royal Pacific, a Corp., bankrupt.

Weber, Schwartz & Alschuler, Beverly Hills, Cal., for Holman and others, underwriters at Lloyd's.

JAMES M. CARTER, District Judge.

These cases are interpleader actions, and the question presented is whether a bankruptcy court in Puerto Rico has exclusive summary jurisdiction, or whether this Court in interpleader actions, has jurisdiction to determine the rights of the parties to the proceeds of the two insurance policies, now paid into the registry of this Court.

Royal Pacific Corporation (hereafter called Royal), was adjudged bankrupt on February 19, 1959, in the bankruptcy court for the district of Puerto Rico. Subsequently, Thomas C. Tilley was appointed Trustee.

Royal owned a 95% interest in the fishing vessel Royal Pacific. Frank Barratino at one time owned the remaining 5% interest in the vessel, but on about August 11, 1959, assigned his interest to the various defendants, Arne Strom, et al., who are doing business as partners under the name of Harbor Boat and Yacht Company. These defendants will be hereafter called Harbor Boat. The 5% interest of Harbor Boat in the insurance policies has been paid to Harbor Boat, and that interest is no longer at issue.

The vessel Royal Pacific was lost by stranding while fishing off the coast of Ecuador on December 10, 1958.

There existed on the vessel two hull insurance policies. One was issued by Glens Falls, plaintiff in case No. 2300 above entitled, and one issued by Holman, et al., Underwriters at Lloyd's, plaintiff in case No. 2322 above entitled, each in the sum of $51,000. There were premiums due and unpaid on each and after deducting the unpaid premiums and after paying off 5% of the balance to satisfy the interest in the boat held by Harbor Boat, there was remaining due from the Glens Falls policy, $42,558.81 and from the Lloyd's policy, $44,758.17.

Harbor Boat, on January 6, 1959, claiming to have made repairs on the vessel as hereafter set forth, commenced an action against Royal in the San Diego Superior Court, action No. 230811. Attachment was levied against Glens Falls Insurance Company, now one of the plaintiffs in the interpleader actions. Thereafter Harbor Boat on June 24, 1959, commenced a second action in San Diego Superior Court, action No. 235252 against Glens Falls Insurance Company and the Underwriters at Lloyd's, plaintiffs in the interpleader actions. Both actions are pending.

On July 2, 1959, National Packing, and on Sept. 22, 1959, Harbor Boat, filed in the Puerto Rico bankruptcy proceedings, the proof of claims hereafter referred to.

On October 2, 1959, Glens Falls commenced action in interpleader, No. 2300 above and named as defendants, Arne Strom and the other partners, doing business as Harbor Boat, Royal Pacific Corporation and Tilley, Trustee in Bankruptcy for Royal.

On November 18, Holman and the Underwriters at Lloyd's commenced action in interpleader, No. 2322 above, naming the same defendants. Each deposited in this Court in the respective actions the net amounts referred to above.

In the interpleader actions the respective plaintiffs recited that claims against the plaintiff insurance companies had been made by Tilley, Trustee in Bankruptcy, for the full amount of the policies and by Harbor Boat for $52,012.36. It later developed that the Harbor Boat claim was actually $52,113.76.

Harbor Boat alleged in its answer in the two interpleader actions that between August 29, 1958 and November 10, 1958, it performed repairs on the vessel Royal Pacific, in the reasonable value of $52,-113.76 and thereby acquired a possessory lien against the vessel to secure this amount; that on November 10, 1958, the owners of the vessel, in consideration of release of the possessory lien and delivering of the vessel to the owner, transferred and assigned to Harbor Boat an interest in the insurance policies and the proceeds thereof for the amount of its claim; and that the owners instructed and directed the insurance companies, in the event of a total loss of the vessel, to pay from the proceeds thereof the claim of Harbor Boat; and that the insurance companies were notified of the assignment, accepted the same and agreed to be bound thereby.

Tilley, the Trustee for Royal was served in action No. 2300 on October 13, 1959; apparently his counsel were served in action No. 2322.

Late in October or early November 1959, Tilley made a motion before the United States District Court in Puerto Rico noticed for November 6, 1959 and later continued to November 25, 1959, for a turn over order directed to the plaintiff insurance companies and to stay the two state court actions pending in California, involving the vessel and the claims of Harbor referred to above and to stay action No. 2300 above (No. 2322 then not being on file).

Whereupon on November 18, 1959, action No. 2322 was filed and the plaintiffs in both actions (No. 2300 and No. 2322) secured from this Court an order dated November 18, 1959, restraining each of the defendants named in the actions Harbor Boat, Royal and Tilley until further order of the Court "from instituting or prosecuting or proceeding in

any state or United States court, including the Puerto Rico Bankruptcy court, affecting, involving or concerning the proceeds of the plaintiff's hull insurance" involved in the two interpleader proceedings, the net amounts of which had been deposited with the Court.

Subsequently, Tilley filed answer in case No. 2300 on November 30, 1959, and in case No. 2322 on April 5, 1960.

Notwithstanding the order made by this Court on November 18, 1959, Tilley's motion in the United States District Court of Puerto Rico, was brought on for hearing on November 25, 1959 and on December 4, 1959, Hon. Clemente Ruiz-Nazario, U. S. District Judge made the following order:

"After consideration of the bankrupt's motion on order staying actions 1, 2 and 3 referred to in its notice of motion, I am convinced it would be inequitable for me to grant said motion. Therefore the same is hereby denied."

Actions 1 and 2 were the State Superior Court proceedings referred to above and action 3 was No. 2300, the case at bar. The motion for a stay *and a turn over* order. The order does not expressly refer to the part of the motion for a turn over order but the motion was denied. We assume the entire motion was denied.

On March 15, 1960, Van Camp Sea Food Company Inc., a corporation, and National Packing Company, a corporation, filed motions to intervene in the interpleader actions, serving Tilley and all parties, and an order was made on March 28, 1960, granting the motions to intervene.

National Packing and Van Camp, intervenors, alleged that prior to November 4, 1958, they had loaned money and advanced credit for repairing and outfitting the vessel Royal Pacific, in the sum of $30,000; that a note in that amount was executed by Royal, together with a mortgage of the vessel; that the owners agreed to insure the vessel against loss to protect the claim of the intervenors and further agreed to assign and deliver to intervenors the policies of insurance, and agreed that they would instruct, order and direct the insurance companies in the event of a total loss of the vessel, to pay the claim of intervenors.

The case was set for pretrial for April 11, 1960. Whereupon both plaintiff insurance companies in the two actions filed motions to be discharged from liability, for a permanent injunction and for award of fees and costs. All parties appeared at the hearing, and the motions to discharge the plaintiffs were granted. There was no objection by Tilley, the Trustee.

The decree discharging plaintiffs from liability etc., in No. 2322 was approved by all parties, including Eugene D. Williams, attorney for Tilley. No such approval appears on the similar decree in case No. 2300, but it was apparent that all parties were satisfied with the decree.

Neither decree is artfully drawn and had the Court been as well advised then as it is now, the decrees would not have been executed in the forms in which they were presented. The decree in case No. 2322 signed April 11, 1960, dismissed the plaintiff from the action and discharged plaintiff from all liability on its policy and enjoined the defendants and intervenors from "collecting or attempting *to collect* the sum of $43,758.17 or any part thereof *from plaintiffs*, said sum being on deposit in the registry of the Court." [Emphasis added]. It further awarded attorney's fees to plaintiff's counsel. It did not enjoin other proceedings; it did not expressly interplead the defendants and intervenors.

The decree in case No. 2300 signed April 14, dismissed plaintiff from the action and discharged it from liability under its policy, and enjoined the defendants and intervenors *"from instituting, prosecuting or proceeding in any court* of any state of the United States or court of the United States, including the United States District Court in the Territory of Puerto Rico, sitting as a court in bankruptcy, affecting, *involving or concerning the proceeds of plaintiff's hull policy No. 52738, in the sum of $42,-*

*558.81 or any part thereof from the plaintiff, and/or from collecting or attempting to collect said* sums of $42,-558.81 or any part thereof *from plaintiff,* said sum being on deposit in the Registry of the court," and enjoined the defendants and intervenors from proceeding with the state court actions on file and fixed attorney's fees and costs for plaintiff's attorneys. The decree did not expressly interplead the defendants and intervenors.

In this posture of the case, Tilley as Trustee, noticed a motion for hearing on June 20, 1960, seeking an order that the monies theretofore paid into court in each of the above entitled actions be assigned and paid over to Tilley, or in the alternative, that the sums be deposited with the clerk of the United States district court for the district of Puerto Rico, in the bankruptcy proceedings pending therein.

The grounds of the motion was that Tilley was now the Trustee of the bankrupt corporation; that Harbor Boat on September 22, 1959, filed proof of their "secured claim in the sum of $52,012.36 and thereby submitted to and became subject to the jurisdiction" of the bankruptcy court; that the claim was allowed as an unsecured claim and the question of security was left pending; that National Packing Company and Van Camp Sea Food Company filed various claims in the bankruptcy proceedings, one of which was a $30,000 claim involved in the intervention in the above actions; and finally that the United States District court for the district of Puerto Rico has acquired "primary and exclusive jurisdiction" to determine all the rights of the parties, since the plaintiff insurance companies had deposited the moneys in court and been "released" in the interpleader actions; that "the jurisdiction of the Bankruptcy court is plenary and exclusive."

At the hearing in this Court on Tilley's motion for a turn over order, the Court received in evidence copies of the claims filed in the Puerto Rico bankruptcy proceedings by the various parties. As to the $30,000 claim filed by National Packing, a notation appears thereon, "allowed 6 October 1959 $30,000 secured status pending" and apparently initialed by referee. On the Harbor Boat claim appears the notation "allowed 6 October 1959 $52,072.36 provisionally, question of security pending," and apparently initialed by the referee.

The claim of Harbor Boat set out in detail its claim of a possessory lien for repair and outfitting of the vessel; and the release of the vessel from the possessory lien in consideration of the transfer and assignment to Harbor Boat of an interest in the insurance policies; that the insurance companies were notified of the assignment and accepted same and agreed to be bound thereby. The claim of Harbor Boat recites the filing of the action in the state court by Harbor Boat against the insurance companies and that "said insurance companies intend to file an interpleader action in the Federal court for the Southern District of California naming all parties concerned as defendants for the purpose of determining who is entitled to said proceeds and in what amounts. *This proof of claim is filed as a secured claim and is filed for the purpose of preserving the rights of said copartnership (Harbor Boat) as an unsecured creditor herein, in the event it is unsuccessful in establishing its lien and interest in said insurance proceeds and right to payment of the sum of * * * $52,012.36 therefrom in said actions."* [Emphasis added].

There were three claims of National Packing received in evidence at the hearing. We are interested in only one claim for $30,000. It was filed as a secured claim, and in paragraph 6 of the form, dealing with the security, there was inserted "refer to statements attached." No such statements were attached.

The Court submitted the Tilley motion and on working on the case, subsequently set aside the submission and directed that a true copy of the claim be filed. This was subsequently done. The new Exhibit set forth the materials which had been attached. A statement recites that

the debt is evidenced by a promissory note for $30,000; that the indebtedness was originally secured by a chattel mortgage on 70% of the interest of the bankrupt in the vessel Royal Pacific, together with any additional interest thereafter acquired; that later a 95% interest in the vessel was acquired; that the chattel mortgage contract contains a clause that the vessel shall be insured and the insurance assigned to the mortgagee; that this clause makes the mortgagee a secured creditor entitled to an equitable lien on the proceeds of the vessel.

There was also attached the promissory note and an original or copy of the chattel mortgage on the vessel.

### The Law—Generally

■ Interpleader is a Federal statutory right, whereby a disinterested stakeholder from whom several people claim the same proceeds may require the claimants to litigate the matter among themselves without embroiling the stakeholder. 28 U.S.C.A. § 1335. In civil actions numbered 2300–SD and 2322–SD, the plaintiffs have complied with the statutory requirements. They have deposited the monies, over which there is a contest, into the Registry of the Court, and have shown that there are adverse parties interested in these monies.

Here, there is the additional problem of the insured having been declared a bankrupt in the Puerto Rico bankruptcy court and the effect that this declaration will have on the interpleader actions filed herein. Thus, it must be determined whether or not the bankruptcy court in Puerto Rico, or the United States District Court in San Diego has jurisdiction over the res of the insurance policies which has been paid into the Registry of the Court in the interpleader actions herein.

■ The summary jurisdiction of a bankruptcy court may be defined as jurisdiction ancillary to a proceeding in bankruptcy not involving a judicial determination of the merits of an adverse claimant of ownership, unless the adverse claimant has consented to such jurisdiction.

■■ Generally, speaking, where the controversy is one concerning property in the actual or constructive possession of the bankruptcy court, that court may adjudicate summarily all rights and claims pertaining to the property. Where the controversy is one involving property in the actual or constructive possession of a third party asserting a bona fide adverse claim, the bankruptcy court has no jurisdiction to determine summarily that person's claim upon petition of the Receiver or Trustee unless by that person's consent. However, without the consent of the adverse claimant, a plenary suit may be brought by the Trustee in the court of appropriate jurisdiction, and this suit will in turn be governed by Section 23 of the Bankruptcy Act, Title 11 U.S.C.A. § 46. See generally 2 Collier on Bankruptcy, (14th Edition), Sec. 23.04(2), p. 450.

■ The property or res involved herein are the proceeds of the insurance policies. They are not now nor ever were in the *actual possession* of the Puerto Rican court. Tilley, Trustee in Bankruptcy, contends however, that they were in the constructive possession of the bankruptcy court. Constructive possession occurs where the property is held by a person other than the court or the Trustee who makes no claim to it. In re American Fidelity Corporation, D.C. S.D.Cal.1939, 28 F.Supp. 462. There are in this case two times when the bankruptcy court may have acquired constructive possession; (1) before the deposit in the Registry of the District Court, and (2) subsequent to said deposit.

### Did the Bankruptcy Court Have Constructive Possession *before* the Deposit of the Monies in the Registry of this Court?

Prior to the deposits in court, the monies due from the plaintiff insurance companies under the policies were choses in action. See 2 Collier on Bankruptcy (14th Edition) Sec. 23.05(4), pp 477–

481. The fact that the monies due the bankrupt Royal was intangible, would not prevent them from passing to the constructive possession of the bankruptcy court absent adverse claims thereto. This would be true if the bankrupt remained the owner thereof until the time of bankruptcy without adverse claims being asserted. In re Worral, 2 Cir., 1935, 79 F.2d 88, and cases cited. But here Harbor Boat alleges an assignment of the proceeds of the policies prior to bankruptcy and National Packing alleges an agreement prior to bankruptcy, to insure and assign the proceeds of the policies.

■ Both creditors made claims against the insurance companies. Where an outright assignment prior to bankruptcy is made to a third party, summary proceedings will not lie. 2 Collier on Bankruptcy, (14th Edition) Sec. 2305 (4), p. 480.

■ Harbor Boat's claim concerns both policies. It alleges its assignment is complete. It does not matter therefore that National Packing's assignment may be incomplete. It would be an incongruous situation to permit the bankruptcy court and this Court to separately rule on the claims to the proceeds of these policies. The right of the two creditors, if entitled to share in the proceeds, will be an issue in these interpleader actions.

Thus, we conclude that since there were adverse claims against the proceeds of the two policies, the policies or the proceeds therefrom, were not in the constructive possession of the bankruptcy court prior to the deposit in this Court.[1]

Did the Bankruptcy Court Acquire Constructive Possession of the Funds *upon* the Deposit in the Registry of this Court?

The deposit of monies in this Court in case 2300–SD was made on October 2, 1959. The deposit in case 2322–SD was made on November 18, 1959. On May 31, 1960, Tilley, Trustee, made his turnover motion in this Court and stated that the "United States District Court

for the District of Puerto Rico has acquired primary and exclusive jurisdiction to determine all rights involved in this action *now that the plaintiff* (Insurance Company) *has been released from the action and the monies deposited in court.*"

■ Inferentially the Trustee appears to contend that since the money is now in the Registry of the Court, it's possession by this Court or by its clerk is not adverse to the Trustee and therefore this money was *after* October 2nd and November 18th 1959, *if not before*, in the constructive possession of the Trustee.

In Jaquith v. Rowley, 1903, 188 U.S. 620, 23 S.Ct. 369, 47 L.Ed. 620, a surety and stakeholder of funds of the bankrupt was held to hold adversely to the Trustee because of adverse claims made against him. The Court said:

"The surety in whose hands the money was deposited to indemnify him for his liability on the bail bond was an adverse claimant within the meaning of that section of the act, and could not be proceeded against in the bankruptcy court unless by his consent, as provided for therein. It is not necessary, in order to be an adverse claimant, that the surety should claim to be the absolute owner of the property in his possession." 188 U.S. at pages 623–624, 23 S.Ct. at page 371.

See also In re Italian Cook Oil Corporation, D.C.N.J.1950, 91 F.Supp. 72, where a bank that claimed no interest in a fund was held to hold adversely to the trustee in bankruptcy because adverse claims had been made against it.

Therefore, it would appear that the monies involved, as held by the insurance company would be considered as being held adverse to the Trustee and thus summary jurisdiction would not attach.

The further problem is presented of whether or not the transfer of said monies to the United States District Court in San Diego would change the adverseness in the holding of this money?

1. We consider later, the question of consent to the jurisdiction of the bankruptcy court.

In an alternate ground of decision the court in Dannel v. Wilson-Weesner-Wilkinson Co., 6 Cir., 1940, 109 F.2d 364, 366, said that:

"Even if this right may be sustained, it is doubtful that the fund could have been reduced to possession by the trustee in a summary proceeding. The contention that the clerk and master did not hold it adversely to the trustee because he claimed no personal interest in it and was a mere stakeholder, is not persuasive. He retained the fund under authority of the statutes of Tennessee and the decree of the Chancery Court for such parties as would be found entitled to it, among which were parties claiming adversely to the trustee. *We have held that where a fund is in the possession of a legal custodian for claimants who are asserting rights adverse to those of the trustee in bankruptcy, and they, in accordance with law, invoke the aid of a proper State Court to perfect and enforce their liens, that they are adverse claimants.* In re Farrell, 6 Cir., [29 Am.B.R. 19] 201 F. 338; In re Rohrer, 6 Cir., [24 Am.B.R. 52] 177 F. 381." [Emphasis supplied.]

This decision would indicate that the transfer of the monies to the clerk of the court does not change the situation and the clerk holds the monies adversely to the Trustee and other claimants.

Along with this conclusion goes the logical analysis that the adverse claims which justify the interpleader in the first instance, attach to the fund when paid into the court on interpleader. Hence, the money is not within the constructive possession of the bankruptcy court in Puerto Rico and summary jurisdiction will not attach.

Has Harbor Boat and National Packing Consented to the Summary Jurisdiction of the Bankruptcy Court?

(1) *Effect of 1952 Amendment*

It is contended that Harbor Boat and National Packing consented to the summary jurisdiction of the Bankruptcy Court in Puerto Rico by filing proof of a secured claim in those proceedings.

Until 1952 "consent is not given even though claimant 'participated in the proceedings' provided formal objection to summary jurisdiction is made before entry of the final order." Cline v. Kaplan, 1944, 323 U.S. 97, at page 100, 65 S.Ct. 155, 157, 89 L.Ed. 97. This had been the rule established in Louisville Trust Co. v. Cominger, 1902, 184 U.S. 18, 22 S.Ct. 293, 46 L.Ed. 413.

By Sec. 2(b) of the Act of July 7, 1952, P.L. 456, 82nd Cong. 2d Sess., Sec. 2, sub. a, 7 of the Bankruptcy Act (11 U.S.C.A. § 11, sub. a(7) ), was amended to insert the last clause now appearing in Sec. 2, sub. a(7), which reads as follows:

"* * * where in a controversy arising in a proceeding under this title an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction; * * *."

The purpose of this amendment was to avoid the effect of Cline v. Kaplan, supra. In Inter-State National Bank of Kansas City v. Luther, 10 Cir., 1955, 221 F.2d 382, 387–388, Judge Murrah ably discusses the amendment and concludes:

"The amendment did not purport to extend summary jurisdiction, * * * nor do we think it purports to extinguish that jurisdiction once it attaches. * * * We think it has application only to controversies arising in bankruptcy proceedings where the adverse party is brought into court by pre-emptory process, as in turn-over order cases like Cline v. Kaplan, supra; and that it was not intended to apply to a claimant if he is already voluntarily in court."

In our case there was a "petition, motion or other pleading" adverse to Harbor Boat and National Packing because of the turn-over motion in the bankruptcy proceedings in the Puerto Rico court. It does not appear in our record whether Harbor Boat and National Packing did or did not oppose the turn-over motion. In any event, the District Judge in Puerto Rico denied the motion.

To the pending motion in this court for a turn-over order, both creditors have made objection and resistance.

We conclude that the 1952 Amendment to Sec. 2, sub. a(7) of the Act (11 U.S. C.A. § 11, sub. a(7) ), does not control our problem. If consent exists, it exists because of the *mere filing* of the claim in the bankruptcy court and not because of any failure to oppose proceedings directed at the two creditors. The turn-over motion in the Puerto Rico court if not opposed, was in any event denied. The turn-over motion in this court has been vigorously opposed.

### (2) *The Filing of Unsecured Claims*

██ Many cases have considered the question as to whether the *mere filing* of a creditor's claim in bankruptcy proceedings, constitutes consent to the summary jurisdiction of the bankruptcy court. Most of these cases do not involve a secured claim, and have arisen on the question of the jurisdiction of the bankruptcy court to grant an affirmative judgment on a counterclaim, which question is not involved in our proceeding.

We are concerned, first, with whether the mere filing of the claim constitutes a consent, and secondly, whether there were sufficient reservations in the claims filed, to prevent consent from taking place. We address ourselves first to the effect of the mere filing of the claim in bankruptcy.

When the creditor files an *unsecured claim* in bankruptcy and the trustee counterclaims for an affirmative judgment on a claim growing out of or connected with the first claim filed, the Ninth Circuit in Peters v. Lines, 9 Cir., 1960, 275 F.2d 919, has held that summary jurisdiction exists in the bankruptcy court over both the claim and the counterclaim.

The Peters case, supra, and the case of Florance v. Kresge, 4 Cir., 1938, 93 F.2d 784, on which Peters relies, and the cases in other circuits holding similarly and collected in the Peters case, are cases where the trustee has an affirmative claim or offset against the claim filed, connected with or growing out of the same transaction.

Thus, in Florance v. Kresge, supra, the receiver claimed the right to set-off against amounts due Kresge, money claimed due out of the same transaction and also claimed the right to an affirmative judgment for the excess amounts. In Inter-State National Bank of Kansas City, v. Luther, supra, the Bank filed a claim on a note due but it was found that the Bank had received within the four months period preceding bankruptcy a preference in payment of $150,000 which the Bank was required to return to the bankrupt estate. As Judge Murrah states in the Inter-State case, supra, 221 F.2d at page 386:

> "In so holding, the referee proceeded upon the premise that when a creditor files his proof of claim, he invokes the jurisdiction of the court and consents to the adjudication of all proper defenses, setoffs and counterclaims that may be lawfully imposed by the trustee."

We accept as established in this circuit by Peters v. Lines, supra, that the mere filing of an *unsecured claim* in a bankruptcy proceeding will ordinarily constitute consent to the summary jurisdiction of the bankruptcy court.

### (3) *The Filing of a Secured Claim Reserving Right to Proceed against the Security.*

██ Is there a difference where the creditor who files a claim has an adverse claim to the property he holds or holds security for his claim? We think our case can be clearly distinguished and that no granting of consent occurred.

The consent found in Peters v. Lines, supra, and similar cases is an *implied*

*consent* from the conduct of the creditor. He did not expressly say, "I consent." The court construes his filing of proof of debt as the consent.

What then do we conclude from the conduct of the secured creditor who states, "I do not consent," but nevertheless files his claim? In the case at bar the two creditors claimed a right to the proceeds of the insurance policies. Whether they claimed an assignment, a lien, or security, they contend in any event, that they have more than an unsecured claim.

The creditors were faced with a dilemma. If they merely file a secured claim, with proof of debt and security, in the bankruptcy proceeding they may be held to have consented to the summary jurisdiction of the bankruptcy court and to have lost their rights to a plenary hearing and trial by jury. If they file an unsecured claim, they have waived their security.

If they do not file any claim, they must stand or fall on the results of another court's decision on the validity of their security and they cannot participate in the distributable assets of the bankrupt as general creditors, except as to such rights they may have to file within thirty days after there has been a * * * "recovery by the trustee from such person of money or property, or the avoidance by the trustee of a lien held by such person * * *", Sec. 57, sub. n of the Bankruptcy Act, Title 11, § 93, sub. n.

There is no valid reason to require them to elect at such an early stage of the proceedings, namely, before the time for filing proof of debt expires in bankruptcy. In re G. L. Odell Const. Co. (American Employers' Ins. Co. v. Leach), D.C.Colo.1954, 119 F.Supp. 578, at page 581. A competent lawyer would advise: "File your proof of secured claim, state that you do not consent to the summary jurisdiction of the bankruptcy court but desire to first proceed to establish your security independently of the summary jurisdiction of the Bankruptcy Court; advise that if you fail to establish your security you want to be considered as a general creditor. Finally, the trustee in bankruptcy may commence a plenary suit but even so, you then get your right to a full fledged hearing and trial by jury."

This is exactly what the two creditors herein did. We are not concerned how artfully they stated their position. Harbor Boat referred to the State Court action and the proposed federal interpleader actions, and stated "* * * this proof of claim is filed as a secured claim and is filed for the purpose of preserving * * * rights * * * as an unsecured creditor herein, in the event it is unsuccessful in establishing its lien and interest * * * in said actions."

National Packing stated in substance that its claim was secured by an equitable lien on the proceeds of the insurance policies. It did not expressly state its desire to proceed independently of the bankruptcy court.

We cannot ignore such reservations and *imply* a consent to the summary jurisdiction of the Bankruptcy Court. Claims filed with such reservations do not come within the rule of Peters v. Lines, supra, and do not constitute consent to the summary jurisdiction of the bankruptcy court.

The cases uniformly *have not found consent* where reservations were stated in the claim filed. Pickens v. Roy, 1902, 187 U.S. 177, 23 S.Ct. 78, 47 L. Ed. 128. (Here the claim was filed "without waiving * * * preference," and the court held this did not "amount to a consent.") 187 U.S. at page 180, 23 S. Ct. at page 79. In re Eakin, 2 Cir., 1946, 154 F.2d 717, at page 719; In re G. L. Odell Const. Co. (American Employers' Ins. Co. v. Leach), D.C.Colo.1954, 119 F. Supp. 578, at page 581; In re Industrial Associates, Incorporated, D.C.E.D.Pa. 1957, 155 F.Supp. 866, at page 871; 2 Collier on Bankruptcy, (1956) Sec. 23.08, Notes 71, 72, p. 532.

Consent by the Bankruptcy Court to Proceedings in the District Court of the Southern District of California.

**460**

■ Assuming that the bankruptcy court in Puerto Rico did have summary jurisdiction, then this court must determine whether or not the bankruptcy court consented that this District Court decide the issues of law and fact as to the insurance proceeds involved herein.

In the case of Isaacs v. Hobbs Tie & Timber Co., 1930, 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645, there appeared the first indication that a bankruptcy court could consent that another court decide issues of law and fact, over property which was within the summary jurisdiction of the bankruptcy court.

In the Isaacs case, supra, it was said that:

"* * * injunctions are granted solely for the reason that the court in which foreclosure proceedings are instituted is without jurisdiction, after adjudication of bankruptcy, to deal with the land or liens upon it *save by consent of the bankruptcy court*." 282 U.S. at pages 738, 739, 51 S.Ct. at page 272. [Emphasis added.]

This line of thought was also expounded in the following authorities: Ex parte Baldwin, 1933, 291 U.S. 610, 619, 54 S. Ct. 551, 78 L.Ed. 1020; Thompson v. Magnolia Petroleum Co., 1939, 309 U.S. 478, 483, 60 S.Ct. 628, 84 L.Ed. 876; Mangus v. Miller, 1942, 317 U.S. 178, 185, 63 S.Ct. 182, 87 L.Ed. 169 and 1 Collier on Bankruptcy, 1956, para. 2.07, pp. 153–154.

The Ninth Circuit has followed this trend of authority in the following cases: Title & Trust Co. v. Wernich, 9 Cir., 1934, 68 F.2d 811, 812; In re Terrace Lawn Memorial Gardens, 9 Cir., 1958, 256 F. 2d 398, 401.

In the case of In re American Fidelity Corporation, D.C.S.D.Cal.1939, 28 F. Supp. 462, the court was faced with the contention that even though the bankruptcy court had actual constructive possession of the res, still the bankruptcy court, in its discretion, had the power to permit the trial in the state court of title to same. The court said that:

"Here it is the very quintessence of exclusive jurisdiction for the Federal court to be able to permit the state court to try a certain issue when it feels that the state court is in a better position to determine the same expeditiously." At page 468; and

"* * * while the bankruptcy court had exclusive jurisdiction to control the administration of the bankrupt estate, it had the right, in the exercise of its discretion to permit a state court to try title to property in the actual or constructive possession of the bankruptcy court." At page 469.

The court concludes by saying that "* * * the bankruptcy court had the power to permit the state court suit to proceed." at page 470.

Here the Puerto Rican court has refused to stay actions in the California Superior Court (numbers 230811 and 235252) and 2300–SD in this court, and refused a turn-over order. In the two State actions, Harbor Boat had sued the two insurance companies. In No. 2300–SD in this court, Glens Falls had interpleaded Harbor Boat, National Packing and the Trustee. Thus, these three actions include in substance the total subject matter with which we are now concerned in these two interpleader actions. By refusing to stay the foregoing interpleader action and Superior Court actions, the Puerto Rican court has, in effect, agreed to the adjudication as to the rights of Harbor Boat and National Packing, in the insurance proceeds, in the Federal and State Courts in San Diego.

The Puerto Rican Court held it would be "inequitable" to restrain the California actions. Showing has been made here that the alleged security transactions occurred in San Diego and that the witnesses to the transactions reside here.

If principles of comity are involved, these additional considerations dictate that this court retain jurisdiction.

In conclusion, this court finds that the bankruptcy court did not have summary juridsiction over the insurance proceeds involved in the cases at bar and thus the secured interest (if they are secured) of Harbor Boat and National Packing, may be adjudicated in this court; or in the alternative that if there was summary jurisdiction, the bankruptcy court in Puerto Rico has consented to the adjudication of this matter in our court. The motion directed to the clerk for a turn-over order is denied.