# April Term, 1946

## No. 15,292.

### FEIRING, TRUSTEE *v.* GANO
(168 P. [2d] 901)

Decided April 8, 1946.   Rehearing denied May 6, 1946.

Mr. ALEXANDER H. ROCKMORE, Mr. ROBERT L. GEE, Mr. S. ARTHUR HENRY, for plaintiff in error.

Mr. ROBERT J. PITKIN, Mr. FREDERICK P. CRANSTON, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE KNOUS delivered the opinion of the court.

HEREIN the parties are aligned as in the trial court and reference will be made to them respectively as plaintiff and defendant. The action was brought by plaintiff, the trustee in bankruptcy of Multiposter Advertising Corporation, a New York corporation, duly adjudged a bankrupt on May 26, 1939, by the United States District Court for the Southern District of New York, to recover from defendant, who, during the times herein involved, was an executive officer of such company, (1) the sum of $2500, the asserted value of 200 shares of the stock of Multiposter, which the stockholders and directors voted on March 10, 1938, to issue to defendant, and (2) the additional sum of $2700 allegedly transferred and paid unlawfully by the corporation to defendant on October 19, 1938, on which date it was averred it either actually or imminently was

insolvent. Plaintiff made the transaction involving the $2500 item, said to have been a fraudulent transfer, the subject of the first cause of action, and in the second, third and fourth causes of action of his complaint separately pled alternative grounds for the recovery of the $2700 as a voidable preference. In course, the district court, Judge Walsh presiding, overruled plaintiff's motion for summary judgment. In the subsequent trial the court, Judge Lindsley presiding, after denying plaintiff's motion for judgment on the pleadings, premised on the same contentions previously advanced in his motion for summary judgment, found for defendant on the first and third causes of action and for plaintiff on the second and fourth, but fixed the amount of the preference recoverable from defendant at $500 instead of $2700 as prayed for. Plaintiff, specifying the foregoing rulings, adverse to him, as points for reversal, brings the case here for review. By cross specifications of points defendant asserts the court erred in adjudging "that the amount of the alleged preference was five hundred dollars or that it was any amount in excess of one dollar, nominal damages."

Plaintiff's motions for summary relief were based upon the following state of the pleadings: The complaint alleged, and the answer admitted, that defendant filed proof of claim for $15,150 against the estate of bankrupt Multiposter; that plaintiff, as trustee in bankruptcy, formally made and served objections thereto under section 57 of the Bankruptcy Act, praying that defendant's claim be disallowed unless he repaid to the estate the sum of $5,200 received by him unlawfully as a transfer and preference voidable under the Bankruptcy Act and that that $5,200 included and represented the causes of action of plaintiff's complaint herein, i.e., $2,500 plus $2,700; that after notice from the Bankruptcy Court and continuances therein, defendant defaulted; that the Referee in Bankruptcy on August 29, 1940, entered an order sustaining plaintiff's objec-

tions to defendant's claim unless defendant should surrender the sum of $5,200 "received by him as a preference, conveyance, transfer and assignment voidable under the Bankruptcy Act," within ten days after service of a copy of the order; that he was served with a copy thereof and that he never has paid or surrendered to plaintiff the sum of $5,200 or any part thereof. It is conceded that no review of the referee's order was attempted and that the time therefor has expired.

Plaintiff asserts, as a matter of law, that in the situation thus portrayed, the order of the referee in bankruptcy was res judicata as to the following facts: (a) A fraudulent transfer was made to defendant and a voidable preference received by him; and, (b) that the amount thereof in combination was $5,200; hence, it is argued, that since neither of these questions properly could again be litigated in the present action, plaintiff was entitled to summary judgment or judgment on the pleadings for the full amount of the recovery sought by him under the complaint.

The basic principle underlying plaintiff's contention is stated succinctly in the opinion in *Wiswall v. Campbell,* 93 U.S. 347, 23 L. Ed. 923, as follows: "Every person submitting himself to the jurisdiction of the bankrupt court in the progress of the cause, for the purpose of having his rights in the estate determined, makes himself a party to the suit, and is bound by what is judicially determined in the legitimate course of the proceeding."

Defendant concedes, as unquestionably is the law (see, Remington on Bankruptcy (4th ed.) vol. 5, p. 461, §2313; 6 Am. Jur., p. 590, §134, and 8 C.J.S., p. 1314, §444), that the referee's order of disallowance of a claim because of an unsurrendered preference or transfer is conclusive in subsequent proceedings as to the *existence* of the voidable preference or transfer on account of which the claim was disallowed, but insists that it is *not* res judicata as to the *amount or value* thereof.

We have never before been called upon to decide the latter point. The reported cases from other jurisdictions in which the question has been considered are not in accord. After so noting, the trial court, but not without expressing some perplexity, finally upheld the position of defendant ·as last ·above stated. We have concluded that this decision should be sustained. In making this determination we are not unmindful· of the fact that certain pronouncements of the respected United States Court of Appeals for the Second Circuit in its opinion in *Schwartz v. Levine & Malin, Inc.*, 111 F. (2d) 81, the most recent case cited on the point (1940), seem to be in direct opposition to our above announced conclusion. In addition to that decision plaintiff cites other cases, including *Moore v. Breit*, 211 Fed. 687; *Breit v. Moore*, 220 Fed. 97; *Lincoln v. People's National Bank*; 260 Fed. 422; *Ullman, Stern & Krausse v. Coppard*, 246 Fed. 124, 158 C.C.A. 350; *Blanks v. West Point Wholesale Grocery Co.*, 225 Ala. 74, 142 So. 49; and *Irving Trust Co. v. Frimitt*, 1. F. Supp. 16, as directly or inferentially supporting his contention that the referee's order was res judicata as to both the existence of the voidable preference and transfer and the amount or value thereof.

On the other hand and seemingly with better reason, considering the language of the statute (section 57(g) of the Bankruptcy Act, 11 U. S. Code §93(g), providing for the disallowance of creditors' claims until voidable preferences or transfers are surrendered, a number of decisions unequivocally support the view we have taken. Typical of these is *Shea v. Falls Canning Co.*, 231 App. Div. 535, 247 N. Y. Supp. 766, wherein it is stated in the syllabus in the Appellate· Division report: "The order of the referee in bankruptcy, declaring a preference and disallowing the claim of the defendant in a specific sum, is not res judicata as to the value of the merchandise transferred to the defendant in a subsequent action by the trustee in bankruptcy to recover a preference. In a case of this character, the referee was not called upon

to decide the question of the value of the goods, and his sole duty ended in holding that there was a preference. The value of the goods may be litigated at a subsequent trial."

In general accord with that tenet are *Metz v. Knobel,* 21 F. (2d) 317, and *Woods v. Rapoport,* 128 Wash. 140, 222 Pac. 220. Inferentially supporting this theory upon the basis that the jurisdiction of the referee in cases of this character does not extend beyond a simple determination of whether the creditor has received or acquired preferences, void or voidable under the Bankruptcy Act, are, *In re Marmolstein,* 13 F. Supp. 396; *In re Florsheim,* 24 F. Supp. 991, and *Triangle Electric Co. v. Foutch,* 40 F. (2d) 353.

Also, as we apprehend, our conclusion is fortified substantially by the circumstance that in both Remington on Bankruptcy and Corpus Juris Secundum the appraisal of the authorities by the author and editors is consonant with our determination. Conformably, it is stated in the first (4th ed.), vol. 5, p. 461, §2313: "And the referee's order of disallowance of a claim because of an unsurrendered preference is res judicata only as to the existence of the preference, * * * and not as to the amount of the preference." In 8 C. J. S., p. 1316, §444, we find the statement: "An order of disallowance, unless claimant surrenders a preference or transfer which he has been found to hold, does not operate as a personal judgment absolutely binding him to return the preference or transfer to the trustee, but only requires such surrender as a condition of allowance; nor is it conclusive as to the value of the goods or property found to be held by claimant, as the only question necessarily involved and determined was whether or not there was a voidable preference or transfer."

While the foregoing were written before the announcement of the decision in *Schwartz v. Levine & Malin, Inc., supra;* nevertheless, considering the reliance of the profession on the foregoing works as reflecting

the consensus of the holdings of the courts, it would seem that if the Circuit Court of Appeals, in the case last mentioned, had intended its decision to render "discredited and obsolete" all previous authorities on the subject, as counsel for plaintiff argues was its effect, it at least would have mentioned the cases overruled or denied. This it does not do. It may even be possible, as counsel for defendant asserts can be gleaned from the briefs in the Schwartz case (copies of which have been filed herein), that no question was raised therein as to the *value* of the preference; however, in the view we entertain, there is no occasion for our conjecturing further on these subjects; nor do we feel that it would be helpful to extend our discussion of the authorities, despite the temptation afforded by the able and interesting analyses of them made by respective counsel.

Thus, notwithstanding that the evidence below covered a much wider field, the area of permissible inquiry with respect to the remaining specifications must be limited to the question of the amount recoverable on account of the voidable transfer and preference. As has been stated, plaintiff, as his first cause of action, insufficiently, in the view of the trial court, sought to fix $2,500 as the recoverable value of 200 shares of Multiposter's no par value stock, transferred to defendant for "past services" under resolutions unanimously adopted by all of the stockholders and by the directors of the company on March 10, 1938. As conclusively found by the referee, the voidability of the transfer arose from a clash with section 69 of the New York Stock Corporation Law (Cahill's Consolidated Laws, c. 60), providing that: "No corporation shall issue either shares of stock or bonds * * * except for money, labor done or property actually received * * * ." The burden of proving herein the value of the property transferred rested with plaintiff (see, 6 Am. Jur., p. 740, §349). Assuming to so do, plaintiff proceeded on the following theory: Originally the company was capitalized at

$100,000 and had 200 shares of no par value stock. By dividing $100,000 by 200, plaintiff figures that the value of each share of stock would be $500. Under the defendant's contract of employment for the period preceding March 10, 1938, he was entitled to receive as compensation five shares of the original stock. Thus, says plaintiff, there then was due defendant for his services in money value, $2,500. On that date the stockholders voted to reduce the book value of the company's capital stock from $100,000 to $5,000 and to amend the articles of incorporation so as to authorize the issuances of 8,800 additional shares of no par value stock equal share for share with the 200 shares of original stock outstanding. The selling price for the new stock was fixed by the directors at $25.00 per share. By the questioned transfer, which followed the foregoing action, defendant received 200 shares thereof, which plaintiff computes had a value of 200 x $25.00 or $5,000. By deducting from that sum the $2,500 aforesaid, reckoned by plaintiff as rightly due defendant for past services, it is contended that the amount recoverable for the estate because of the transfer was $2,500. Even if it is assumed, arguendo, that this computation tends to show a deficiency in consideration for the transfer, it still remains obvious that it fails wholly to establish that the transferred stock had any actual intrinsic worth or value whatsoever. There was no subsequent sale of the stock involved, by defendant.

In an attempt to import an actual value, plaintiff adduced evidence that coincident with the transfer in discussion, defendant, one of his relatives, and another friend, each bought 200 shares of the new issue for $25.00 per share cash. The implication projected is practically destroyed by other proof of the plaintiff that at the time, the heavily indebted corporation was without tangible assets and the record generally proclaims that the purchases mentioned were not made on a value received basis but instead were prompted by what

turned out to be a vain effort to inject new life into an expiring corporation.

It thus seems certain from the evidence that the questioned transfer did not deplete or diminish the assets of the bankrupt's estate which might have been subjected by the creditors. Nor, in so far as the creditors are concerned, would a different result have attained if the transfer had been cancelled or the certificate surrendered to the estate. It follows that since the property transferred was without extrinsic value, no basis for the recovery of money damages therefor was established by plaintiff.

As has been mentioned hereinabove, the trial court found for plaintiff on the second and fourth causes of action, but allowed recovery for only $500 of the $2,700 claimed as the amount or value of the voidable preference given defendant. In essential outline this controversy arose from the following circumstances. Shortly after defendant became associated with the management of Multiposter he discovered that Cunningham Drug Stores, Inc., of Detroit, had ordered 100 Multiposter machines (a patented automatic advertising device), which, because of a lack of production facilities Multiposter had failed to deliver as promised. Defendant obtained a reinstatement of the order and contacted Federal Telegraph Company of Newark for an arrangement for the manufacture of these 100 machines. Federal expressed a willingness to do so for $10,000, but required $5,000 to be paid before it would proceed with the fabrication. Multiposter, however, was without sufficient funds to make the advance, and to expedite the matter defendant loaned it $5,000, taking the company's note therefor with an assignment of the Cunningham Stores contract and the moneys to arise therefrom as collateral security. Multiposter then paid Federal the advance demanded. Then and subsequently Federal was notified of the assignment of the Cunningham contract to defendant. Thereafter Federal manufactured the

machines and shipped 72—according to defendant's figures—of them C. O. D. to Cunningham. Federal so collected $7,200, which, with the $5,000 advance, put in its hands $12,200, or $2,200 in excess of the contract price of $10,000 for the manufacture of the Cunningham order, but notwithstanding, instead of paying such excess to defendant under his assignment, Federal credited the $2,200 to a larger balance due it from Multiposter on another older transaction. In this dilemma, after defendant's attempts to induce voluntary payment by Federal had come to naught, defendant and other managing officials of Multiposter agreed that the best thing to do was for the latter to pay defendant $2,700 and permit the credit of the surplus of the Cunningham proceeds on the old account to stand as made by Federal.

█ It is said by defendant that the $500 in excess of the $2,200 collected and credited by Federal was included in this arrangement to compensate for the release to Multiposter of his interest under the assignment in twenty-odd machines still held by Federal awaiting shipping instructions. In pursuance, on October 19, 1938, Multiposter issued its check for $2,700 to defendant. As has been detailed, the referee determined—which as we have seen is legally conclusive herein—that such payment was in violation of the second and last sentences of section 15 of the Stock Corporation Law of New York, and so constituted a voidable preference. The trial court did not express in the record the formula by which it arrived at the figure of $500 allowed as the amount or value of the preference. The arguments of counsel for defendant on this point predominantly tend to question the existence of the preference and to the demonstration of the ethicalness of defendant's conduct in his dealings with Multiposter. While we readily agree with the earnest plea of counsel that, notwithstanding defendant's diligent efforts to make the enterprise a success, his association with Multiposter already has occasioned heavy financial loss to him and his family, it

still remains that such do not avoid the fact that as an officer and creditor, defendant received from the funds of the imminently insolvent corporation $2,700 under conditions—impregnable to reexamination herein as a result of the referee's order—creating a preference lawfully recoverable for the benefit of the bankrupt's estate. Differently from the situation attending in the first cause of action, the advantage here obtained is definitely proclaimed in terms of cash value. Even if it is conceded that defendant, by reason of the assignment of the Cunningham contract, was entitled to the $2,200 excess collected by Federal, he had no enforceable claim against Multiposter therefor on any trust-fund theory, since the latter never had in its possession one cent of the moneys assigned. For this item defendant's right of recovery was against Federal and not Multiposter. The circumstance that Federal credited Multiposter's old account with the Cunningham collection avails defendant nothing in the way of mitigation, since in a plenary action to recover the value of a preference, a court cannot allow, by way of reduction of damages, such amounts as the preferred creditor has paid to other creditors out of the proceeds of the property preferentially transferred. See, Collier on Bankruptcy (13th ed.) vol. 2, p. 1331, §60(h) (2).

From our study we have discovered no tenable theory upon which the reduction of the recovery to $500 may be upheld, and we conclude that instead, the judgment should have been for $2,700.

Under this disposition no occasion arises for considering the specifications concerning the third cause of action, denied to plaintiff by the trial court, since it sought judgment upon a different theory for the identical $2,700 payment which we have held recoverable under causes second and fourth.

■ Plaintiff finally objects that the trial court failed to allow him interest, although prayed for in his complaint. As defendant concedes inferentially, plaintiff

was entitled to recover interest at the statutory rate from the date of the commencement of the action. See, *Kaufman v. Tredway*, 195 U.S. 271, 25 Sup. Ct. 33, 49 L. Ed. 190, and *Levy v. Weinberg & Holman, Inc.*, 20 F. (2d) 565, 568.

It is ordered that the judgment be modified so as to award plaintiff $2,700, instead of $500, on the second and fourth causes of action, together with interest as above indicated. As so modified the judgment is affirmed, each party to pay his costs in this court.

MR. JUSTICE JACKSON and MR. JUSTICE BAKKE concur.