Louis **KATCHEN** and Howard M. Katchen, Appellants,

v.

Hyman D. **LANDY**, Trustee in Bankruptcy, Appellee.

In the Matter of **KATCHEN'S BONUS CORNER, INC.,** Bankrupt.

No. 7483.

United States Court of Appeals Tenth Circuit.

Sept. 9, 1964.

Warren Martin, of Winner, Berge & Martin, Denver, Colo., for appellants.

Solomon Girsh, of Girsh & Rottman, Denver, Colo. (Robert B. Rottman, Denver, Colo., with him on brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS, PICKETT, LEWIS, BREITENSTEIN, HILL and SETH, Circuit Judges.

MURRAH, Chief Judge.

This appeal involves the bankruptcy court's summary jurisdiction of four counterclaims, three of which seek to recover voidable preferences, and one to recover from the claimant the purchase price of subscribed organizational stock of the bankrupt corporation. This latter claim does not appear to arise out of the same transaction on which the claim is based. The trial Court upheld the bankruptcy court's assumed summary jurisdiction of all the counterclaims on authority of Inter-State National Bank of Kansas City v. Luther, Trustee, 221 F.2d 382, cert. granted 350 U.S. 810, 76 S.Ct. 77, 100 L.Ed. 726, cert. dismissed

by stipulation of parties, Id., 944, 76 S.Ct. 297, 100 L.Ed. 823.

In Inter-State, we upheld the power of the bankruptcy court to entertain a counterclaim to fully adjudicate and recover a § 57, sub. g preference, whether such counterclaim is compulsory under Rule 13(a) or permissive under Rule 13(b), F.R.Civ.P. A majority of the court en banc took the view that the filing of a claim in bankruptcy operates to invoke the bankruptcy court's exclusive jurisdiction under § 2, sub. a(2), to sift the circumstances surrounding any claim and allow or disallow it, according to equitable precepts. And, more specifically, the filing of the claim in bankruptcy operates to invoke the court's concurrent jurisdiction with the state courts under § 60, sub. b, to fully adjudicate and recover any voidable preference. See: Inter-State, supra, 221 F.2d p. 389. We were furthermore of the opinion that the right to plenary suit being procedural, may be waived, i. e., see: O'Dell v. United States (10 CA), 326 F.2d 451, and having voluntarily invoked the summary jurisdiction of the bankruptcy court, the claimant could not thereafter limit the exercise of that jurisdiction over the subject matter by objection thereto. See: Inter-State, supra, 221 F.2d p. 388; and Continental Casualty Co. v. White, 4 Cir., 269 F.2d 213, 216. Cf.: United Artists Corporation v. Masterpiece Productions, 2 Cir., 221 F.2d 213.

Appellants concede that the three preferential counterclaims are ruled by Inter-State, supra, and candidly say that insofar as that case sustains summary jurisdiction to grant affirmative relief on a counterclaim over the objection of the claimant, it is an unwarranted extension of jurisdiction by implied consent and should now be overruled. We heard this case en banc, to re-examine Inter-State in the light of the claims made for it here and because it presents an important question of bankruptcy administration, as to which there is a difference of opinion on this court and elsewhere.

Since Inter-State, other Circuits have considered the question of summary jurisdiction of counterclaims based upon consent implied by the filing of claims. Soon after Inter-State, the Seventh Circuit concurred in the view that the filing of a claim in the bankruptcy court gave consent to be sued on counterclaims arising out of the same transaction, but was of the view that such filing did not constitute implied consent to be sued "on an alleged cause of action arising out of a different subject matter." In Re Majestic Radio & Television Corporation, 227 F.2d 152, 156. The Fourth Circuit has also concurred in the view that the filing of a claim gave consent to the exercise of summary jurisdiction over a compulsory counterclaim, but had no occasion to decide whether the filing of a claim gave the court jurisdiction of an unrelated and permissive counterclaim. See: Continental Casualty Co. v. White, supra. The Ninth Circuit has upheld the jurisdiction of the bankruptcy court over a counterclaim, but agreed with the Seventh Circuit that the filing of a claim did not give consent to summary jurisdiction of a counterclaim not arising from the same transaction on which the claim was based. See: Peters v. Lines, 275 F.2d 919.

The most recent case involving the precise point is from the Second Circuit where, apparently on authority of Inter-State, supra, it sustained summary jurisdiction of a counterclaim for the surrender of a preference without stating whether the counterclaim arose out of the same transaction. Judge Kaufman, speaking for that Court, reasoned that the filing of a claim in the bankruptcy court is analogous to the commencement of an action within the bankruptcy proceedings; that the Trustee's counterclaim was in the nature of an answer for affirmative relief by way of the surrender of a preference; and, that the claimant is deemed to have impliedly consented to the jurisdiction of the court toward complete relief. See: Nortex Trading Corporation v. Newfield, 311 F. 2d 163. And see also: In the Matter of Farrell Publishing Corporation, Bankrupt, D.C., 130 F.Supp. 449; and Collier

On Bankruptcy, Vol. 2, §§ 23.08[5], 23.-08[6].[1]

■■ Upon reconsideration of Inter-State, in the light of subsequent decisions and commentary, we have decided to adhere to its pronouncements. But, we decline to extend the summary jurisdiction of the court by implied consent to counterclaims which do not involve a preference, setoff, voidable lien, or a fraudulent transfer, and which are wholly unrelated to the creditor's claim. Claims of this nature are not within the Referee's summary jurisdiction, and a claimant does not consent to the exercise of the bankruptcy court's plenary jurisdiction by filing his claim in the bankruptcy proceedings. See: Collier On Bankruptcy, Vol. 2, § 23.15.

■ The appellants also deny that the counterclaims are based upon a preference, on the ground that the Trustee failed to sustain the burden of proving that the bankrupt was insolvent when the transfers giving rise to the preference claim were made. But, there can be no doubt that appellants knew, or had reason to believe, that the corporation of which they were the progenitors and central figures was insolvent when they caused it to make payments to the bank, on notes on which appellant-Louis Katchen was an accommodation maker. The proof here fully meets the test set forth in Moran Brothers, Inc. v. Yinger, 10 Cir., 323 F.2d 699.

The judgment of the bankruptcy court is affirmed on all the counterclaims except the Trustee's counterclaim for the purchase price of the subscription stock.

SETH, Circuit Judge (concurring):

I concur in the foregoing opinion of the court as expressed by Chief Judge Murrah, and would like to state some considerations which I consider important in examining the action of the trial court and the referee.

The record shows that the bankrupt corporation began business in April 1960 with the appellant as a vice president, director, and stockholder. His two sons and a third party were the other stockholders and directors. The referee found that the appellant agreed to pay $10,000.-00 for the one thousand authorized shares of the company, that he caused the shares to be issued to himself, his two sons, and a third party. The two sons and the third party then pledged their shares to the appellant and such pledge was in effect when the bankruptcy proceedings commenced. He further found that none of the pledgors ever paid anything to the company or the appellant for the pledged shares. It appears that the shares that the two sons were to receive were to be in the form of a gift from the appellant. Appellant was a vice president and director until his resignation on October 30, 1960.

In April 1960 the bankrupt borrowed $40,000.00 from the American National Bank and gave a note upon which appellant asserts that he was an accommodation maker. In June 1960 the bankrupt borrowed $10,000.00 on a note from the North Denver Bank. This note bore the typewritten name of the bankrupt and the signature of the appellant and two other stockholders without further designation or description. Appellant claims

---

1. Professor James William Moore, Editor-In-Chief of the 14th Edition of Collier On Bankruptcy, treated Inter-State in a comprehensive article entitled RES JUDICATA AND COLLATERAL ESTOPPEL IN BANKRUPTCY, 68 Yale L.J. 1, 32. Professor Moore agrees with the majority of the court in Inter-State on two grounds: (1) Under the doctrine of Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192, "equity once invoked will achieve complete relief." See also: Taylor v. Producers Pipe & Supply Co., 10 Cir., 114 F.2d 785. (2)

On the theory that a "sound construction of the Bankruptcy Act warrants complete adjudication." Id., p. 38. He also reasoned with the majority in Inter-State that "as an incident of its power to disallow claims, the bankruptcy court * * * has jurisdiction to determine a § 57(g) issue raised by the Trustee, and by the same reasoning, to entertain a counterclaim recognized by § 68, authorized by Rule 13, and based upon the § 57(g) issue. * * *"
And see: Case Notes, 60 Mich.L.Rev. 96; 69 Harvard L.Rev. 377.

he is not an accommodation maker or personally liable on this $10,000.00 note.

The bankrupt suffered in August 1960 a fire loss, and thereafter the collections of the bankrupt were placed in a so-called trust account in the name of and under the sole control of the appellant. The appellant paid on October 13, 1960, from corporate funds in this trust account the sum of $14,599.00 and on November 18, 1960, the sum of $10,137.50 on the $40,000.00 note given to the American National Bank above referred to. Appellant admitted these payments served to diminish his personal liability, and that he knew this when he made the payments. The appellant from this trust fund further paid in September 1960 the sum of $10,162.50 to the North Denver Bank on the note described above.

The appellant filed in the bankruptcy proceedings two claims, one in the amount of $4,625.00 for unpaid rent on the premises which he owned and which were occupied by the bankrupt, and the second claim in the amount of $5,000.00 representing a payment to the bank from claimant's personal funds as an accommodation maker on the note of the corporate bankrupt given to the American National Bank described above.

The referee found that the payment of the corporate funds from the trust account on the bank notes constituted a preference received by the appellant, and repayment of the total of such payments was ordered. The referee further ordered the appellant to pay the amount of $10,000.00 as an unpaid subscription for the corporate stock.

Against this background of business dealings, family relationships, and participation in the management of the bankrupt, the appellant filed his claims. The appellant made this filing not only with his complete and intimate knowledge of the corporate transactions which were involved, but also with what we must assume to be his knowledge of the law pertaining to the filing of such a claim.

Appellant, we must also assume, had knowledge that his claim would be heard before the bankruptcy court, and the scope of the hearing would include those subjects required by 11 U.S.C.A. §§ 96 and 93, sub. g. This scope and issues of the summary hearing necessarily included, and the referee was required by law, to determine whether or not the disbursements of corporate funds made by the appellant to the banks in partial payment of the notes on which his signature appeared constituted a preference. This is clearly a part of the substantive law of bankruptcy. The hearing necessarily had to include sufficient testimony and evidence in order that the referee could decide whether or not there had been a preference to appellant. Such a determination in any case of this character would be binding by res judicata or by equitable estoppel in any subsequent plenary action. The plenary suit would thus be reduced to a mere formality except as to the dollar amount of the preference, and perhaps not even that. Schwartz v. Levine & Malin, 111 F.2d 81 (2d Cir.), held such amount was just as important for the bankruptcy court to determine as the nature of the payment because the allowance of the claim was conditional on repayment of the preference.

Thus under the circumstances it is certainly reasonable to believe that the appellant expected when he filed his claim that at least other payments on the same note also remitted by himself would be considered, and that the whole matter was so interrelated that obviously the issue of preference would be litigated. This waiver is even clearer when made in a jurisdiction where Inter-State Nat'l Bank of Kansas City v. Luther, 221 F.2d 382 (10th Cir.), is the prevailing rule. There the question is exhaustively treated, and a claimant's position is clearly stated. This scope of the hearing is not a procedural matter but again is a matter of substantive bankruptcy law. The court cannot close its eyes to what the appellant did in the preference transaction and when considering what he did as a claimant. Both are matters of substantive bankruptcy law and both are

matters for determination by the same court to accomplish a complete disposition of the issues before the equity court. The appellant by his claim submitted the entire question to the bankruptcy court, not just a portion of it. This is the reason why the substantive law relating to setoffs, fraudulent transfers, and similar transactions are handled in the manner they are. The claimant has a right to have his claims and relationships with the bankrupt determined. This right carries with it the expectation of a complete adjudication of his claims and preferences like any other litigation he may be involved in outside the bankruptcy field. This again really differs from setoffs, balancing of accounts, and fraudulent transfers only in the relative amounts involved. Any litigant or claimant when he enters any court room can expect to be met by counterclaims and by setoffs. The only choice such litigant has is whether or not he should become the moving party or wait and become a defendant. This can be a difficult decision but one faced by litigants frequently. The decision here is whether to become a moving party and also to submit the adjudication of claims and preferences to the bankruptcy court without a jury, or whether to forego the filing of his claim and wait to become a defendant. The bankruptcy proceeding, like the right to trial by jury, has its origin in the Constitution and they are to that extent of equal dignity. There is no question that Congress under § 8 of Article 2 of the Constitution has the power to establish laws relative to the handling of claims and preferences. Since bankruptcy proceedings are of equitable nature, these claims, setoffs, voidable liens, and fraudulent transfers are handled by summary proceedings. This substantive law is such that when a claimant submits the disposition of his claim, he thereby submits to the adjudication by such court of all issues relating to his claim, and to any asserted preferences he may have received. His claim has to pass this statutory preference test.

As indicated above the determination of the issue of a preference is binding by res judicata on the parties in the event that plenary proceedings be commenced. Thus it would serve no useful purpose to try the same issue in such proceedings. This finality of decision in summary proceedings is an important factor in evaluating the issue before us at this time. The author of 3 Collier, Bankruptcy, 14th Ed., at ¶ 57.14, in discussion of allowance or disallowance of claims, states: "Where disallowance (pending surrender of preferences) is based on a voidable preference, the findings with regard to the preference are *res judicata* in the trustee's suit to recover the preference." The author further states on the issue of the power of the court: "But a litigated issue of jurisdiction, like other issues, may be conclusively adjudicated, and the fact that the court may exceed its jurisdiction, e. g., the referee rendering an affirmative judgment on the trustee's counterclaim without the creditor's consent, does not preclude the judgment from having the effect of *res judicata:* the judgment may be erroneous and subject to reversal on appeal, but it is not void and subject to collateral attack." The Supreme Court in Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104, and in Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244, has held that the determination by the court of bankruptcy of its jurisdiction is res judicata in subsequent proceedings. The Second Circuit in Schwartz v. Levine & Malin, 111 F.2d 81, stated that the determination or finding as to the preferential nature of a payment to the claimant made following the summary hearing on the claim is res judicata in a subsequent plenary action. In the cited case the court had before it such a plenary action and held that the trial court was correct in granting a summary judgment on the ground that the matter of the preferential nature of the payment had been determined in the bankruptcy court. The court there added, as above indicated in this opinion,

that the amount of the payment was as important as the nature of the payment. Thus apparently the court would and did apply the doctrine of res judicata both as to the amount and character of the payment. The court concluded its opinion by stating: "All the conditions were fulfilled which made his findings res judicata, and there was nothing left to be decided in the action at bar," citing Fayerweather v. Ritch, 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193. A similar holding appears in Giffin v. Vought, 175 F.2d 186 (2d Cir.), and in Johnson v. Wilson, 118 F.2d 557 (9th Cir.). A clear indication that the determination of the issue of preference during the hearing on the claim is not a matter of consent by the claimant, as indicated in In Re J. R. Palmenberg Sons, Inc., 76 F.2d 935, aff'd. sub nom. Bronx Brass Foundry v. Irving Trust Co., 297 U.S. 230, 56 S.Ct. 451, 80 L.Ed. 657, where the court refused to let the claimant withdraw his claim when the bankruptcy court was in the process of considering the preference issue. Res judicata was further carefully considered by the state court in Feiring v. Gano, 114 Colo. 567, 168 P.2d 901, 165 A.L.R. 1406. The bankruptcy court judgments have the same effect as those of other courts having general jurisdiction. The general principles relating to res judicata and equitable estoppel are applied. The issues which were or could have been adjudicated become significant. Professor Moore in his article on this subject in 68 Yale L.J. 33 states: "When, however, the trustee does interpose a section 57g defense and the issue is decided against him, allowance of the claim bars his subsequent action to recover on the theory of a voidable transfer. For similar reasons, a decision in the trustee's favor on a section 57g defense concludes the issue against the creditor in a later plenary action brought by the trustee to recover the money or property preferentially or fraudulently transferred."

The trustee seems to have little choice as to summary or plenary actions. The author of 2 Collier, Bankruptcy, states in a footnote to ¶ 23.08: "It is immate-

rial that the bankruptcy trustee does not consent to the jurisdiction of the bankruptcy court with respect to a suit against him by an adverse claimant, since he is merely the court's officer and if the adverse parties consent that the matter be adjudicated by the bankruptcy court and the court so orders, the trustee's consent follows such order. Section 23 has no application. (Citing several cases)."

The appellant has waived by the filing of his claims in this action any right to object to the nature or the scope of the summary hearing insofar as it may cover claims and preferences. Such subjects are clearly within the substantive bankruptcy law, and he must abide by the decision of the court.

I concur in the opinion of the court as announced by Chief Judge Murrah on this point and also in its holding that there was no such waiver by the appellant as to the stock subscription, it being wholly outside the matter of claims and preferences.

PHILLIPS, Circuit Judge, whom LEWIS and BREITENSTEIN, Circuit Judges, join (concurring in part and dissenting in part).

Where used herein the word "creditor" refers to a general creditor, who asserts a provable claim against a bankrupt's estate.

I start with the premise that a jury trial cannot be had in a proceeding before a referee in bankruptcy.

It is my opinion that the trustee cannot assert in a counterclaim to a claim filed by a creditor, a claim against the creditor, which, absent the filing of the claim by the creditor, the trustee could only have asserted in a plenary action in which the creditor would be entitled to a trial by jury, unless the creditor had consented to the summary determination of the trustee's claim by the referee; and further, that the filing of a claim by the creditor does not constitute such a consent.

It will be observed that what I say is restricted to a trustee's claim of a charac-

ter, which, if asserted in an ordinary plenary action, the defendant thereto would be entitled to a jury trial. It is so restricted, because the claim asserted by the trustee in each of the several counterclaims here involved is of that character.

The reason for my conclusion may be simply stated. The right of a general creditor of the bankrupt to file a claim against the bankrupt estate, to have his claim determined, and, if allowed, to participate in the distribution of the bankrupt estate is a substantive and fundamental right. The privilege to exercise such a fundamental right may not be conditioned by a mere procedural rule on the surrender of another distinct and nonalternative fundamental right of the creditor. The other right here involved is a constitutional right of the creditor to have a claim asserted against him by the trustee, absent his consent to the summary disposition thereof by the referee, determined on a trial by jury in a plenary action. The creditor may not be compelled to choose between the exercise of two distinct and nonalternative fundamental rights by Rule 13 of the Federal Rules of Civil Procedure.

Moreover, I think what I have said is equally applicable where the trustee's counterclaim is for the recovery of an alleged unlawful preference.

If it is established that the creditor has received or acquired an unlawful preference, his claim against the bankrupt estate must be disallowed in toto, unless he surrenders such preference to the trustee (11 U.S.C.A. § 93, sub. g). The nonsurrendered preference is a bar to the allowance of the claim. It may not be used as a setoff, either to reduce or extinguish the creditor's claim, but only to bar its allowance in toto; and the creditor may not effect the surrender of the preference in whole or in part by crediting on his claim the amount or value of the preference. To permit the unlawful preference so to be used as a setoff or credit would, in effect, give the creditors the benefit of the unlawful preference and result in his receiving more than his pro rata share in the assets of the bankrupt estate, to the detriment of the other creditors.[1] He must surrender his preference in its entirety, or forego the allowance of his claim. An exception has been recognized in certain cases, but only to the extent of crediting the dividend on his claim. It has been held where a creditor has been adjudged to surrender a preferential payment by a judgment of the bankruptcy court, which may be done when the creditor consents to a summary determination, and it is practical to ascertain the amount of the dividend to which the creditor will be entitled on his claim, the bankruptcy court may permit the creditor, if he is so advised, to prove his claim against the estate of the bankrupt, determine the amount of the dividend coming to the creditor, and by its final decree direct him to pay over the full amount of the preferential payment with interest, less the amount of his dividend.[2] But in no case could the creditor have credited against the amount to be sur-

1. Irving Trust Co. v. Frimitt, D.C.N.Y., 1 F.Supp. 16, 17; Remington on Bankruptcy, Rev.Ed., 1957, Vol. 3, §§ 1455–1456; Rotan Grocery Co. v. West, 5 Cir., 246 F. 685; Walker v. Wilkinson, 5 Cir., 296 F. 850, 852.

2. Page v. Rogers, 211 U.S. 575, 581, 29 S.Ct. 159, 162, 53 L.Ed. 332. In the opinion the court said:
   "* * * In view of the fact that this suit was brought in the bankruptcy court itself, and a final decree is to be entered by the judge of that court, it is entirely practicable to avoid the circuitous proceeding of compelling the defendant to pay into the bankruptcy court the full amount of the preference which he has received, and then to resort to the same court to obtain part of it back by way of dividend. The defendant may be permitted, if he shall be so advised, to prove his claim against the estate of the bankrupt, and the bankrupt court then may settle the amount of the dividend coming to him, and the final decree may direct him to pay over the full amount of his preference, with interest, less the amount of his dividend. * * *"

rendered as an unlawful preference more than the pro rata dividend he would be entitled to on his claim.

For the same reasons the claim of the creditor and the counterclaims of the trustee here may not be treated as mutual debts and credits and one set off against the other under 11 U.S.C.A. § 108.

My conclusion is that the claims here asserted by the trustee for preferences have none of the characteristics of a setoff.

Moreover, it is my opinion that the trustee may not set up as a defense to a claim of a creditor an alleged, but not judicially established claim that the creditor had received or acquired an unlawful preference, which he had not surrendered, and have the alleged claim of an unlawful preference adjudicated by the referee in a summary proceeding; and then set up in an action to recover the unlawful preference the adjudication with respect thereto in the summary proceeding as res judicata. I do not think the trustee should be permitted to have his claim of an unlawful preference established in a summary proceeding, equitable in nature, and by the simple device of not praying for the recovery of the alleged preference, forever deprive the creditor of his right to have the trustee's claim determined on a jury trial in a plenary proceeding. Otherwise, the trustee could do indirectly that which he could not do directly and thereby deprive the creditor of a jury trial on the claim of an unlawful preference.

Of course, what I have said is restricted to cases where the creditor's claim of right to retain what the trustee asserts he received or acquired as an unlawful preference is substantial and not merely colorable.[3]

A court of bankruptcy is in a strict sense a court of equity, except so far as is otherwise expressly provided in the Bankruptcy Act,[4] and its proceedings are governed by rules of practice in equity.[5]

The right to a jury trial in a matter involving both legal and equitable claims may not be taken away by the prior determination of the equitable claim. In Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44, the court said:

"The Federal Rules did not, however, purport to change the basic holding of Scott v. Neely [140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358] that the right to trial by jury of legal claims must be preserved. Quite the contrary, Rule 38(a) expressly reaffirms that constitutional principle, declaring: 'The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.' Nonetheless, after the adoption of the Federal Rules, attempts were made indirectly to undercut that right by having federal courts in which cases involving both legal and equitable claims were filed decide the equitable claim first. The result of this procedure in those cases in which it was followed was that any issue common to both the legal and equitable claims was finally determined by the court and the party seeking trial by jury on the legal claim was deprived of that right as to these common issues. This procedure finally came before us in Beacon Theatres, Inc., v. Westover [359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988], a case which, like this one, arose from the denial of a peti-

3. Here, the trustee did not assert and the referee did not find that the creditor's claim of right to retain what the trustee asserted was an unlawful preference was merely colorable and not substantial.

4. Young v. Higbee Co., 324 U.S. 204, 214, 65 S.Ct. 594, 89 L.Ed. 890; Securities and Exchange Comm'n v. United States

Realty Co., 310 U.S. 434, 435, 60 S.Ct. 1044, 84 L.Ed. 1293; Continental Motors Corporation v. Morris, 10 Cir., 169 F. 2d 315, 317; Rader v. Boyd, 10 Cir., 252 F.2d 585, 586.

5. Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281; Luther v. United States, 10 Cir., 225 F.2d 495, 498.

tion for mandamus to compel a district judge to vacate his order striking a demand for trial by jury.

"Our decision reversing that case not only emphasizes the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury but also limits the issues open for determination here by defining the protection to which that right is entitled in cases involving both legal and equitable claims. The holding in *Beacon Theatres* was that where both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.' * * * "

See, also, Meeker v. Ambassador Oil Corp., 375 U.S. 160, 84 S.Ct. 273, 11 L.Ed.2d 261.

This does not leave the trustee without an adequate remedy. He may apply to the referee for an order staying the proceedings on the claim, in order that he may commence and prosecute a plenary action to recover the alleged unlawful preference and if he establishes such preference and obtains a judgment for its recovery and the creditor does not surrender it to the trustee, the trustee may then set up the unsurrendered unlawful preference as a bar to the creditor's claim. That procedure has been approved by respectable authority.[6]

Instances of the converse of the situation here presented will arise, and in my opinion should be considered. The trustee who asserts a claim for an unlawful preference may believe it would be to his advantage to have such claim determined by a jury trial in a plenary action. Assume that situation exists, that the

person against whom the trustee's claim is asserted has filed a claim as a creditor against the bankrupt estate and that the two claims are so related that if Rule 13(a) of the Federal Rules of Civil Procedure is applicable, the trustee's claim is a compulsory counterclaim. May the creditor by filing his claim, through the operation of a procedural rule, deprive the trustee of his substantive right to a jury trial? I think the answer is obviously no.

What I have said in this opinion supplements my dissent in Inter-State National Bank of Kansas City v. Luther, 10 Cir., 221 F.2d 393, to which dissent I fully adhere.

Accordingly, I concur in the reversal of the referee's order, with respect to the counterclaim for the alleged unpaid stock subscription, and in all other respects dissent.

---

6. B. F. Avery & Sons Co. v. Davis, 5 Cir., 192 F.2d 255; Triangle Electric Co. v. Foutch, 8 Cir., 40 F.2d 353, 357; In re Continental Producing Co., D.C.Cal., 261 F. 627, 629; In re G. L. Odell Const. Co., D.C.Colo., 119 F.Supp. 578, 581.