**In the Matter of BEASLEY–GILBERT'S, INC., Bankrupt.**

**No. 48262.**

United States District Court
S. D. Ohio, W. D.

May 7, 1968.

Robert G. Stachler, Cincinnati, Ohio, Sheldon A. Taft, Columbus, Ohio, for Fred R. Beasley.

John W. Beatty, Cincinnati, Ohio, Chester Fitch, Cyrus P. Kahl, Portsmouth, Ohio, for trustee.

## OPINION

HOGAN, District Judge.

The Trustee in Bankruptcy of Beasley-Gilbert's, Inc., the bankrupt, has petitioned for review of an Order of the Referee in Bankruptcy. Presented are questions of "implied consent" for "summary jurisdiction" purposes.

The bankrupt was a corporation engaged substantially in the grocery field in and about Portsmouth, Ohio. At least by 1966, there were substantial dealings between the bankrupt corporation and Fred R. Beasley, an individual, who resides in Athens County, Ohio, near Portsmouth. For instance, it appears that on the 11th of August a contract was entered into between the bankrupt company (then called Gilbert's, Inc.) and Beasley, under the terms of which the bankrupt sold a warehouse facility in Portsmouth to Beasley for some $180,000; the transaction involved the cancellation of an $80,000 note given some time before by one of the parties to the other; the agreement or transaction also appears to have involved a relationship with another obligation under which Beasley evidently agreed to erect a warehouse facility in Athens County, which in turn was to be leased by Beasley to the bankrupt company. Then it appears that on September 8, 1966, Beasley executed an individual guaranty of the debts of the corporation then known as "Gilbert's, Inc." In its verbiage the guaranty extended to present and future creditors of Gilbert's, Inc. If the obligations connected with the erection of the warehouse in Athens County were reduced to a writing, the record is not before us, so we do not know whether it was in writing or oral, although it would appear probable that such type of transaction would have been a written one. In any event, the record also indicates that there is a claim that in 1966, Mr. Beasley orally agreed on various occasions to subscribe for and purchase and pay for $50,000-par value-stock of the Gilbert corporation. We note also that evidently some time between August of 1966 and January of 1967, the name of the company was changed from Gilbert to Beasley-Gilbert. The company was adjudicated a bankrupt in or about January of 1967.

During 1967, Mr. Beasley filed three unsecured claims with the Trustee in Bankruptcy. One was for rent which had accrued prior to the bankruptcy on the warehouse in Portsmouth which, as we have noted, the bankrupt was to continue to occupy until the new warehouse in Athens County had been built. The second claim filed by Mr. Beasley was for rent accruing subsequent to the adjudication on the same warehouse. The third claim was a claim for some $348,000 based on Beasley's liability to creditors of the bankrupt because of the guaranty

agreement executed by Beasley on September 8, 1966.

Thereupon, the Trustee filed three separate counterclaims in the Bankruptcy Court against Mr. Beasley, which were as follows: The first was for a return of a preference in the amount of $80,000, resulting from the preferential or fraudulent conveyance, as it is claimed, of the Portsmouth warehouse to Mr. Beasley, part payment for which was cancellation of a preexisting indebtedness. The second was for an amount equal to all claims of all creditors based on Mr. Beasley's liability under guaranty agreement executed by him on September 8, 1966. For our present purposes, this claim was for $348,000 approximately. The third claim asserted by the Trustee was for payment of the $50,000 based on a contract (oral) entered into by Mr. Beasley to purchase one thousand shares of the bankrupt's stock for $50 per share.

Beasley appeared before the Referee for the limited purpose of objecting to the summary jurisdiction of the Referee in respect of the several counterclaims asserted by the Trustee. The Bankruptcy Court determined that it did have summary jurisdiction in respect of the first counterclaim, i. e., the preference or fraudulent, or preferential conveyance claim. The determination was based on Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). Beasley concedes the correctness of that determination. The Bankruptcy Court granted Beasley's motion to dismiss the Trustee's counterclaim on the alleged written guaranty and the oral stock subscription agreement on the ground that the Bankruptcy Court lacked summary jurisdiction to decide either or both of those two claims. Thereupon, the Trustee filed his petition for review.

■■ With respect to the Trustee's counterclaim seeking to recover the $348,-000, being claims of the bankrupt's trade creditors based on the individual guaranty of Beasley—we affirm the Referee for two reasons. First, the Bankruptcy Court and each of its officers has only such jurisdiction or powers as is or are given by the Bankruptcy Act. The power of either the Court or an officer to act in a given manner or in a particular way must be found expressly or impliedly in the wording of the Bankruptcy Act. In re Ross Sand & Gravel, Inc., 289 F.2d 311 (6th Cir. 1961). We have examined carefully the Bankruptcy Act, and specifically Sections 11, 47, and 70 (11 U.S.C. §§ 29, 75, 110) and find no basis for the assertion that the Bankruptcy Court or its Trustee has any power to assert the claim of a creditor of the bankrupt on an individual guaranty given by an individual to that creditor of the obligation of the bankrupt. See 38 C.J.S. Guaranty § 86, p. 1256 and cases there cited. The relationship between the Bankruptcy Court and its Trustee and a surety or guarantor on a debt or debts of the bankrupt seem to be governed by Section 57i of the Bankruptcy Act (11 U.S.C. § 93) which deals with the general subject and simply extends a right to a guarantor or surety.

■■ Before stating the second reason, a brief summary of the existing status of the law would be appropriate. The basic problems revolve about "implied consent" for jurisdictional purposes and the right to a jury trial under the Seventh Amendment. It is settled that a creditor who proves a claim submits himself to the summary jurisdiction of the Bankruptcy Court in respect of preferences or voidable transfers, including the jurisdiction of the Bankruptcy Court to enter a monetary judgment or order a return. Katchen v. Landy, supra. It also appears to be fairly well settled that a creditor who files his claim in the Bankruptcy Court impliedly consents to be sued on counterclaims arising out of the same transaction, but that such a filing does not constitute implied consent to be sued on an alleged cause of action arising out of a different subject matter. In re Majestic Radio & Television Corp., 227 F.2d 152 (7th Cir. 1955). The matter is sometimes stated in the terms of compulsory or permissive counterclaims with reference to Federal Rule of Civil Procedure No. 13. See also Katchen v.

Landy, 336 F.2d 535 (10th Cir. 1964). Collier uses the test of "related" or "wholly unrelated." Collier on Bankruptcy Vol. 2, Section 23.15. Returning to this case, the claim filed by Mr. Beasley in relation to the $348,000—if it is a claim for implied consent purposes—is certainly related to the counterclaim of the Trustee for the $348,000 (if it is assertable as a claim at all by the Trustee). The question of whether or not a guarantor or surety who presents a claim in his assured party's name under Section 57i (11 U.S.C. § 93) "impliedly consents" to any summary exercise of jurisdiction by the Bankruptcy Court has, so far as we are able to ascertain, not heretofore arisen. In this case we do not, and we emphasize that, have it in the context of a preference or a voidable transfer. At the most, we have it in the context of a related contract claim. The statute reads as follows:

"Whenever a *creditor whose claim against a bankrupt estate* is secured, in whole or in part, by the individual undertaking of *a person*, fails to prove and file that claim, *that person may do so in the creditor's name*, and he shall be subrogated to the rights of the creditor, whether the claim has been filed by the creditor or by him in the creditor's name, to the extent that he discharges the undertaking except that in absence of an agreement to the contrary, he shall not be entitled to any dividend until the amount paid to the creditor on the undertaking plus the dividends paid to the creditor from the bankrupt estate on the claim equal the amount of the entire claim of the creditor. Any excess received by the creditor shall be held by him in trust for such person." 11 U.S.C. § 93i.

 The statute *expressly* provides that a guarantor must file his claim in the "creditor's name." The statute does *not* convert the creditor's claim into a guarantor's personal claim. Normally a surety or guarantor has against the principal debtor an express or implied personal claim to be indemnified or reimbursed. However, Section 57i denies the

right and confines the surety or guarantor to the proof of the *creditor's* claim in the *creditor's* name:

"Without a section 57i there could be no doubt that such a claim is provable by the surety in the same manner any other claim provable under section 63a may be presented, namely as a surety's own claim against the bankrupt principal debtor. Section 57i flatly denies this right. It confines the secondary debtor to a proof of the creditor's claim, in the creditor's name. * * *

"It is this *one* claim, namely the creditor's claim that the surety may prove prior to or after subrogation, and not his own claim upon an agreement, express or implied, of indemnity." (Collier on Bankruptcy, 14th Ed., para. 57.21 at notes 10 and 12, emphasis in original; Farmers State Bank v. Jones, 135 F.2d 215, 6th Cir.; J. S. Farming Co. v. Brannon, 263 F. 891, 6th Cir.)

Section 57i specifically denies Beasley, or any other surety or guarantor who files a claim under Section 57i, the right to share or participate in the distribution of the bankrupt's property unless he actually discharges the debt, in whole or in part. (3 Collier on Bankruptcy, 14th Ed., para. 57.21[4]). Then Beasley or any such surety or guarantor, "shall not be entitled to any dividend until the amount paid to the creditor or the undertaking plus the dividends paid to the creditor from the bankrupt estate on the claim equal the amount of the entire claim of the creditor." (See Sec. 57i above.) Thus Beasley cannot share or participate in the distribution of the bankrupt's property until after all other creditors whose claims are secured by the alleged guaranty are made whole.

 The law is well settled, particularly in the Sixth Circuit, that a Section 57i claim of subrogation is subject to the same burdens and disabilities to which the *original creditors' claims* were subject. (3 Collier on Bankruptcy, 14th Ed., para. 57.21 at note 28 and para. 5719 [3.3] at note 24; Livingstone v. Heineman, 120 F. 786 (6th Cir. 1903)).

Basically, the problem revolves about the Seventh Amendment. One who executes a guaranty, at the point of execution and at the point of default, has a right to have any questions of fact connected with an asserted liability determined by a jury.[1] While a creditor who asserts his own claim impliedly consents to the summary jurisdiction of a bankruptcy court in related counterclaims, the exercise of a guarantor of a procedural protection provided by 57i of the Bankruptcy Act should not be conditioned on the surrender of the fundamental right of the guarantor to that jury trial. (See *Judge Phillips'* dissenting opinion in *Katchen*, 336 F.2d at 541.) We hold, therefore, that the mere filing, by a guarantor, not of a claim of his but of a claim of a creditor of a bankrupt, whose claim the guarantor or surety has underwritten, is not an implied consent to the summary exercise of jurisdiction by the Bankruptcy Court as to the presenter of the claim and that such be so whether the trustee's asserted claim be related or unrelated.

We come finally to the claim of the Trustee based on the oral stock subscription for $50,000. It is the claim of the Trustee that the stock subscription claim arose in a single transaction or a series of related transactions between the bankrupt and Beasley, which included the contractual relationships in 1966 which we have described above, etc. Both the Trustee and Beasley concede that a question of "related transaction" is a mixed question of law and fact. The Referee made no specific finding of fact in this connection, although the Referee did conclude as a matter of law, based on the Tenth Circuit's *Katchen* decision, that the Bankruptcy Court lacked summary jurisdiction. Since the Referee recited the importance of "related transaction" in his statement of the question, we take his conclusion, although mechanically under "conclusions of law," as a finding of fact of non-relationship. Viewed in that light, it is our duty "not to disturb" these findings. In re Newman, 126 F.2d 336 (6th Cir. 1942); General Order 47; Rule 52 F.R.Civ.P.; In re Albert Harris, Inc. (Machinery Terminals, Inc. v. Woodward) 313 F.2d 447 (6th Cir. 1964). Since we know of no case which upholds summary jurisdiction of an unrelated counterclaim, the conclusion of the Referee on this issue also is affirmed.

Before approaching an appropriate order, we note from this record that independent lawsuits have been filed by some 17 of the trade creditors against Beasley on the 1966 guaranty in various courts. As a matter of fact, some 8 of them are pending in this Court. While as applied to those 8, a consolidation order for discovery purpose has been entered, it is noted that it has been asserted that separate trials will be required because of different issues. We note this for two reasons: First, the recitations in this opinion of facts appearing from this record are carefully limited to this review. This Court is aware that some of the items asserted as facts in this opinion are or may be contested in the eight plenary cases pending in this Court. The recitations in this opinion are not prejudgments in any sense of the word. The recitations merely are justified by the record before us and for the purposes for which this case pends. The second reason mention is made of some 17 plenary lawsuits being pending is this: it is desirable that the questions raised in this review—while they certainly should have been raised by the Trustee—should be brought to finality so that the parties of interest, whomever they may be, may proceed with some certainty. If this Court and its Referee should be wrong and this matter eventually pend for summary disposition before the Referee, and if the Referee's summary disposition should disagree or differ from an interim or subsequent jury verdict in one of the pending cases, the situation would approach the chaotic. Our course is pointed out clearly in the *Katchen*

---

1. Compare United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed. 138, April, 1968.

case, 382 U.S. at page 338, 86 S.Ct. at page 477, in which the Court says:

"The argument here is that the same issues * * * may be presented either as equitable issues in the bankruptcy court or as legal issues in a plenary suit and that the bankruptcy court should stay its own proceedings and direct the bankruptcy trustee to commence a plenary suit so as to preserve petitioner's right to a jury trial. Unquestionably the bankruptcy court would have power to give such an instruction to the trustee. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, [60 S.Ct. 628, 84 L.Ed. 876]; see Bankruptcy Act § 2a(7), 11 U.S.C. § 11a(7)."

It is, therefore, ordered—

1) That the prayer of the petition for review be and it hereby is denied, and that the Order of the Referee in Bankruptcy, the Honorable Raymond J. Pellman, of March 8, 1968, be and it hereby is confirmed in each and every respect.

2) This cause is remanded to the Referee in Bankruptcy with directions to instruct the Trustee that if the Trustee, either in his own determination or on instructions from the Referee, determines to assert and prosecute either of the two claims asserted as counterclaims and dealt with hereinabove, that such assertions be made in plenary actions.